MARY MEZULLO vs. LEO MALETZ.

Bristol.   October 26, 1953. — March 18, 1954.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Insane Person.   Physician and Surgeon.   Negligence,* Physician and surgeon.   *Proximate Cause.   Malice.   Witness,* Privilege.   *Conspiracy. Actionable Tort.   False Imprisonment.*

Language in a declaration to the effect that by reason of conduct of the defendant, a physician, the plaintiff was "committed" to an institution for the insane referred to a commitment by judicial process. [234]

Allegations in the declaration in an action of tort merely that through negligence of the defendant, a physician, in performing a mental examination of the plaintiff and in signing a certificate of her insanity she was committed to an institution for the insane did not show that the alleged negligence was a proximate cause of the judge's order of commitment nor state a cause of action. [234–235]

An examining physician in a judicial proceeding for commitment to an institution for the insane has an absolute privilege exempting him from liability in tort to the committed person for making a false certificate of insanity negligently or even maliciously and in bad faith. [235–237]

One committed to an institution for the insane upon an order of a judge free from defect or irregularity has no cause of action for false imprisonment against one of the examining physicians based on his making a false certificate of insanity. [237]

Violation of G. L. (Ter. Ed.) c. 123, § 110, as amended by St. 1937, c. 136, by a physician by wilfully conspiring with another unlawfully or improperly to commit to an institution for the insane a person who is not insane and by making a certificate of insanity in furtherance of the conspiracy would not of itself create a civil cause of action in favor of the person committed against the physician. [237–240]

TORT.   Writ in the Superior Court dated October 5, 1948.
The action was heard by *Nagle, J.,* on demurrer.
*Gerald P. Walsh,* for the plaintiff, submitted a brief.
*John A. Perkins,* for the defendant.

SPALDING, J.   The declaration in this action of tort contains three counts, to each of which the defendant de-

murred.[1] The demurrer was sustained as to all counts and the plaintiff appealed.

Before discussing the counts in detail it will be helpful to construe certain language which is common to all of them. In each count the plaintiff alleges that as a result of the conduct of the defendant, a physician, she was "committed" to a State hospital for the insane. The hospitalization of insane persons is governed by c. 123 of G. L. (Ter. Ed.), the title of which is "Commitment and Care of the Insane and Other Mental Defectives." Sections 51, 77, 78, and 79, among others not here applicable, set out at some length various procedures by which a person can be confined in a hospital for the insane. Sections 51 and 77 relate to commitment and are so entitled and worded. Sections 78 and 79 relate to reception for temporary care and treatment and do not use the word commitment. Thus from the standpoint of procedure those sections make clear the distinction between a commitment on the one hand and an admission for care and treatment on the other. With these statutes as a background to the allegations in the declaration we are of opinion that the plaintiff was referring to a commitment of the sort mentioned in §§ 51 or 77, or both, and that a judicial proceeding with an order of commitment preceded the plaintiff's confinement in the State hospital.

1. The plaintiff alleged in the first count that the defendant negligently performed a mental examination of her and signed a certificate to the effect that she was insane or of unsound mind and that as a result of such negligence the "plaintiff . . . was committed" to a State institution for the insane. The demurrer was rightly sustained. In *Niven* v. *Boland*, 177 Mass. 11, the sustaining of a demurrer to a declaration quite similar to this count was upheld by this court. One of the grounds relied on by the court was that, although the certificate of the examining physicians in a

---

[1] The demurrer to the first count included as one of the grounds that the matters therein contained are insufficient in law to enable the plaintiff to maintain an action of tort. This ground was the only one assigned in the demurrer to the second and third counts.

commitment proceeding is intended to, and does in practice, have great weight, a commitment cannot take place without an order from the judge, and a finding by him that the person committed is insane, and without the judge seeing and examining the person alleged to be insane, or stating the reason for not doing so.[1] The court pointed out — and this is true here — that there was no averment in the declaration that there was no oral testimony, or that, if there was, the judge did not base his finding upon it, but based it upon the certificate furnished by the defendants. Continuing the court said, "It is difficult to see therefore how, assuming that there was negligence in the examination, and that the certificate was false, it can be said that that was the proximate cause of the commitment" (page 13).

Another ground of the decision was: "[T]he examining physicians are called upon to perform an important duty. In discharging it they are not engaged in the ordinary practice of their profession. If they do not occupy a quasi official or judicial position, they at least occupy the position of persons whose testimony is expressly required by statute in aid of judicial proceedings . . . . And we think that the privilege which attaches to parties and witnesses in other judicial proceedings to parties instituting criminal proceedings, and to cases of privileged communications, should attach to examining physicians in cases like the present, and that so long as they act in good faith and without malice they should be exempt from liability" (pages 13–14). The authority of the *Niven* case on the point there decided has never been impaired and we think it is controlling here. Cases elsewhere which are in accord with the principles there stated are *Springer* v. *Steiner*, 91 Ore. 100, 112–114, *Brandt* v. *Brandt*, 286 Ill. App. 151, 161–162, and *Dyer* v. *Dyer*, 178 Tenn. 234. See *Linder* v. *Foster*, 209 Minn. 43.

2. The sustaining of the demurrer to the second count was likewise right. That count alleges in substance that

---

[1] The statutes under consideration there were Pub. Sts. c. 87, §§ 12 and 13, the predecessors of G. L. (Ter. Ed.) c. 123, §§ 51 and 53.

the defendant "did maliciously and in bad faith execute and sign a certificate designed by law for the commitment of individuals to State institutions for the insane" when he "knew or should have known" that the plaintiff was sane, and that the plaintiff as a result was "caused to be confined in and committed to a State institution for the insane."

This count presents the question whether a physician signing a certificate in a commitment proceeding will be liable in tort if he acts maliciously and in bad faith. In a dictum in the *Niven* case it was intimated that the examining physicians' immunity from liability with respect to their certificates exists "so long as they act in good faith and without malice." 177 Mass. 11, 14. In support of this statement the court cited, among others, the case of *Hoar* v. *Wood*, 3 Met. 193, in which it was said that defamatory words spoken by a party or counsel in the course of judicial proceedings are not actionable if they are pertinent to the inquiry and "were spoken bona fide, without actual malice, or intent to defame the witness" (page 198). See also *Wright* v. *Lothrop*, 149 Mass. 385, 390. But not all of the earlier cases defined the privilege of a witness, party, or counsel with the qualification just mentioned. See, for example, *Watson* v. *Moore*, 2 Cush. 133, 138; *Rice* v. *Coolidge*, 121 Mass. 393, 395.

But whatever the law may have been formerly on this subject it is now settled that words spoken by a witness in the course of judicial proceedings which are pertinent to the matter in hearing are absolutely privileged, even if uttered maliciously or in bad faith. *Laing* v. *Mitten*, 185 Mass. 233, 235. *Sheppard* v. *Bryant*, 191 Mass. 591, 592. And this is the prevailing view elsewhere. 12 A. L. R. 1247 et seq. and cases there collected. Prosser on Torts, § 94. Restatement: Torts, § 588. If a physician signing a certificate is entitled to the privilege of a witness — and the *Niven* case so holds — then it would follow that he does not lose it on proof of malice or bad faith. We see no sound basis for holding the privilege of such a witness to be absolute so far as defamatory words are concerned

but qualified in a case like the present. The reasons for an absolute privilege are quite as strong in the latter situation as in the former. It is important that judges charged with the duty of committing insane persons should have the assistance of medical experts in forming their conclusions. The privilege is a compromise between competing rights: the right of a person to be free from false statements touching his mental condition, and the right public and private of a thorough investigation when necessary by some tribunal before which the witnesses may speak without fear. "It is more important that the administration of the law in the manner provided should not be obstructed by the fears of physicians that they may render themselves liable to suit, than it is that the person certified by them to be insane . . . should have a right of action in case it turns out that the certificate ought not to have been given." *Niven* v. *Boland*, 177 Mass. 11, 14. And, as the defendant has argued, the privilege would afford small comfort to the physician if there was a possibility that he would be subjected in every instance to an inquiry as to his motives.

If count 2 be regarded as an attempt to state a cause of action for false imprisonment, it must fail. Under our construction of the declaration the plaintiff was confined pursuant to an order of commitment made by a judge and there is no averment of any defect or irregularity in the order. One who procures the arrest or confinement of another on lawful process is not liable to an action of false imprisonment, although he caused the process to issue by means of false statements. *Coupal* v. *Ward*, 106 Mass. 289. *Mullen* v. *Brown*, 138 Mass. 114. *MacLean* v. *Naumkeag Trust Co.* 268 Mass. 437. *Jordan* v. *C. I. T. Corp.* 302 Mass. 281, 285. *Doggett* v. *Hooper*, 306 Mass. 129, 133.

3. The allegations of the third count are in substance that the defendant "wilfully conspired with the plaintiff's husband to unlawfully and improperly have the . . . plaintiff committed as an insane person" when the defendant knew that the plaintiff was sane; that in furtherance of the conspiracy the defendant "did sign or execute a cer-

tificate of commitment" whereby the plaintiff was seized and committed; and that in consequence of the defendant's conduct, which was in violation of G. L. (Ter. Ed.) c. 123, § 110, the plaintiff was deprived of her liberty and suffered other physical and mental harm.

Section 110, as amended by St. 1937, c. 136, reads: "Whoever wilfully conspires with a person unlawfully or improperly to commit to an institution for the insane a person who is not insane or wilfully assists in or connives at such a commitment shall be punished by fine or imprisonment, at the discretion of the court." The plaintiff contends that this statute creates a cause of action for civil conspiracy. We do not agree. There are instances, to be sure, where the violation of a penal statute has certain legal consequences in civil litigation. For example, in actions of tort for negligence it frequently happens that the violation of a penal statute will constitute evidence of negligence. See *Baggs* v. *Hirschfield*, 293 Mass. 1, 3; *Wynn* v. *Sullivan*, 294 Mass. 562, and cases collected in footnote at page 566. But such statutes ordinarily are not construed as creating new causes of action.

In general it may be said that penal statutes have been construed as creating a new cause of action independently of the common law if, and only if, that appears by express terms or by clear implication to have been the legislative intent. *Wynn* v. *Sullivan*, 294 Mass. 562 (penal statutes designed to insure safety in the maintenance and operation of elevators). *Richmond* v. *Warren Institution for Savings*, 307 Mass. 483 (statute forbidding obstructions on stairways). *Barboza* v. *Decas*, 311 Mass. 10, 12 (statute forbidding sale of intoxicating liquor to a minor). Compare *Gallagher* v. *Wheeler*, 292 Mass. 547 (right of action for damages expressly created by statute). But no such intent appears in § 110. All that that section does is to create a criminal offence and to provide penalties for its violation; it does not create a civil cause of action. That was the view of this court in *Niven* v. *Boland*, 177 Mass. 11, 14, where Pub. Sts. c. 87, § 30 (a predecessor of § 110), was

referred to in explaining the necessity of exempting from
civil liability a physician who signs a certificate in a com-
mitment proceeding. "The statute," said the court, "pro-
vides a penalty for a physician who conspires with any
person unlawfully or improperly to commit to any lunatic
hospital or asylum a person who is not insane, *but goes no
further*" (emphasis supplied). The statute then, as now,
fills what would otherwise be a gap, at least with respect
to those statutes dealing with commitment proceedings, by
providing a ·penalty for conspiracy to engage in conduct
which is exempt from civil liability.

The plaintiff, however, relies on a statement in *Karja-
vainen* v. *Buswell*, 289 Mass. 419, as authority for her
contention that § 110 creates a civil cause of action for
conspiracy. There it was said, at page 426, that § 110
"makes clear that a combination between a physician and
another to commit a sane person to an insane asylum is
not only a criminal conspiracy, punishable in the manner
provided, but is also a civil conspiracy which gives a right
of action for damages to a person whose rights are injured."[1]
At first blush this statement — a dictum at most — would
appear to support the plaintiff's argument, but, when read
in context, it does not go that far. In that case the court
was, among other things, considering the liability of a
physician responsible for the detention of a person under
G. L. (Ter. Ed.) c. 123, § 79, where no commitment by a
judge is required. The court was of opinion that § 79
confers no immunity on a physician or any of the other
officers named in that section who takes one in custody
for confinement under that section and they may be held
liable for their conduct unless they act in good faith and
without negligence. In support of this conclusion the
court was of opinion that the imposition of criminal liabil-

---

[1] At the time the *Karjavainen* case was decided § 110 was in substantially
the same form as Pub. Sts. c. 87, § 30, which was discussed in *Niven* v. *Boland*,
177 Mass. 11, 14. Both statutes made it an offence for a physician to con-
spire with a person to commit one who is not insane to an institution for the
insane. By St. 1937, c. 136, section 110 was changed to its present form so
that it applies to anyone who conspires with another to commit a person not
insane or who wilfully assists in or connives at such commitment.

ity under § 110 was inconsistent with a legislative intent to free the physician from civil liability according to common law principles. The statement quoted above, we think, cannot fairly be read as authority for imposing civil liability on a physician where none existed before. If, however, the statement goes beyond that, we are not disposed to follow it.

The plaintiff does not contend that a case at common law is made out by the allegations of the third count; she relies exclusively on the statute. But that, as we have seen, gives her no rights.

What is here decided with respect to the third count is the opinion of a majority of the court.

*Order sustaining demurrer affirmed.*
*Judgment for the defendant.*