STATE EX REL. HASKETT *v.* MARION COUNTY CRIMINAL COURT, ROOM ONE, DAVIS, JUDGE.

[No. 1067S102. Filed February 28, 1968. Rehearing denied April 9, 1968.]

*Ferdinand Samper,* of Indianapolis, for relator.

*Noble R. Pearcy,* Prosecuting Attorney, and *Stanley B. Miller,* Deputy Prosecuting Attorney, for respondents.

ARTERBURN, J.—This is an original action to compel the respondent court to expunge and strike from its record an order made on September 20, 1966, against the relator "to answer all questions put to him by physicians and each of them pursuant to statute." This order results from proceedings to have the relator determined to be a sexual psychopathic person under the Acts of 1949, ch. 124, as amended by the Acts of 1959, ch. 356, being Burns' Ind. Stat. Anno. § 9-3401, *et seq.* The court had previously appointed two qualified physicians to examine the relator. The relator had previously been charged by affidavit with the criminal offense of "peeping in house."

The relator, by his petition, seeks to challenge the constitutionality of the Indiana law providing for the determination

and declaration of a person charged with a sexual offense of being a sexual psychopathic person.

The specific section involved herein is Burns' Ind. Stat. Anno. § 9-3404 [1967 Cum. Supp.] which reads as follows:

"(a) Upon the filing of such statement by the prosecuting attorney the court shall, or if filed on behalf of the accused the court may, appoint two [2] qualified physicians to make a personal examination of such alleged criminal sexual psychopathic person, which physicians shall file with the court a written report of the results of their examination, together with their conclusions. Such reports shall be open to inspection by the accused and by legal counsel for the accused, but shall not be considered to be competent evidence in any other proceeding filed against the accused except in the hearing, as hereinafter provided, to inquire into the alleged psychopathy of the accused. The alleged psychopathic person who is examined by the two [2] physicians is required to answer the questions propounded by the physicians under penalty of contempt of court.

"(b) In the event that both of the examining physicians in their reports concluded that the person examined is a criminal sexual psychopath, then proceedings shall be had, as in this act [§§ 9-3401—9-3412] provided, to determine the psychopathy of such person.Such proceedings shall be had prior to a trial of such person upon the criminal offense with which he then stands charged, or prior to sentence if he then stands convicted and has not been placed on probation, or prior to the completion of any probationary sentence imposed.

"(c) Upon the filing of the reports of the two [2] examining physicians, the judge of the court shall examine the reports. If the statement containing the allegation of the psychopathy of the accused and the reports of the two [2] examining physicians are found to be in legal form, the judge shall fix a time and place for a hearing for the determination of the alleged psychopathy of the accused. The court shall order and direct the sheriff of the county to notify the accused of the nature of the proceedings and the time and place of the hearing. The judge may issue subpoenas for any witnesses who may have a knowledge of any facts relevant to the nature of the proceedings. At the time and place appointed, unless an adjournment to another time and place has been ordered, the judge shall proceed to hear such proceedings, and shall examine the

witnesses under oath concerning the matter of the alleged psychopathy of the accused.

"(d) If, upon the conclusion of the hearing and examination, it shall appear to the judge that the person so alleged to be a criminal sexual psychopath is probably a criminal sexual psychopath, the judge shall commit such person to the division of mental health, such person to be confined by the division in an appropriate state psychiatric institution for an indeterminate period of not to exceed sixty [60] days, for the purpose of observation, evaluation and diagnosis of such person by the psychiatric staff of such institution. The superintendent of the institution shall, within sixty [60] days from the date of admission, file with court a written report of the findings, conclusions and recommendations of the psychiatric staff. Such report shall be open for inspection by the accused and by the legal counsel for the accused, but it shall not be deemed to be competent evidence in any other proceeding brought against the accused except in the proceeding to inquire into the alleged psychopathy of the accused.

"In the event the psychiatric staff in its report concludes that the accused person is a criminal sexual psychopath, the court shall then determine the question of the psychopathy of the accused person and shall enter an order and judgment in accordance with such finding and determination. If such person is found by the court to be a criminal sexual psychopath, the court shall in its order and judgment commit such person to the division of mental health, to be confined by the division in an appropriate state psychiatric institution until such person shall have fully and permanently recovered from such psychopathy."

There is no dispute between the parties that the procedural steps were followed in order to invoke the authority of the court to act pursuant to the statute.

It is the contention of the relator that although the respondent was acting pursuant to the language of the appropriate statute, such language is unconstitutional and void and constitutes a violation of his privilege against self-incrimination and the information he will be required to give to the physicians will be used against him in a subsequent hearing where his alleged criminal sexual psychopathy is to be determined.

In support of this assertion relators call the attention of this court to two United States Supreme Court cases: *Miranda* v. *Arizona* (1936), 384 U. S. 436, 86 S. C. 1602, 16 L. Ed. 2d 694; *Application of Gault* (1967), 387 U. S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527.

In *Miranda* v. *Arizona, supra,* we understand this case to emphasize the new rule for police interrogations was founded upon the privilege of an accused under the Fifth Amendment of the Constitution not to be compelled to incriminate himself. Under said rule there were four essential requirements: (1) the right to remain silent; (2) the effect of making a statement; (3) the right to an attorney; and (4) the right to an appointed attorney.

The facts in the *Miranda* case, by way of summary, were these: Miranda was taken into custody and after two hours of interrogation he executed a signed statement. He had not been advised that he had a right to have an attorney present during the questioning, but an introductory paragraph at the beginning of his written confession stated that he had made the confession voluntarily and with full knowledge of his legal rights, with the understanding that the statement could be used against him. The written confession was admitted into evidence over the objection of defense counsel. The Supreme Court reversed because Miranda was not in any way apprised of his right to consultation with an attorney and to have one present during the interrogation.

In the *Gault* case, a fifteen-year-old boy was arrested for making lewd and indecent remarks to a woman neighbor. He was held in a detention home until the following day, at which time a petition was filed against him indicating that he was under the age of eighteen and was a delinquent minor. The boy's mother was present at the hearing, but the complaining neighbor was not. No one was sworn at the hearing and no transcript or record was made. The mother of the juvenile indicated that the juvenile had said he dialed the number, but that a friend with him had made the lewd re-

marks. The hearing was concluded and the juvenile was released. The mother of the juvenile received a plain letter from the probation officer indicating a hearing was set for a specific date and at that time the juvenile was in the company of his mother and father. At this hearing a request by the mother to have the complaining witnesses present was denied by the court. The juvenile was committed for the period of his minority to the State Industrial School. Since no appeal was permitted by Arizona law, the juvenile filed a petition for a writ of habeas corpus in the state court, which was denied. On appeal, the United States Supreme Court reversed. *Gault, supra.*

In the case of *People of the State of Illinois* v. *Forest G. English* (1964), 31 Ill. 2d 301, 201 N. E. 2d 455, the Illinois Supreme Court examined a similar question presented by the relator's petition. In this case a defendant was ordered to appear before two qualified psychiatrists for examination pursuant to the Illinois Sexually Dangerous Persons Act (Ill. Rev. Stat. 1963, ch. 38, pars. 105-1.01 to 105-12). The defendant appeared before the psychiatrist and informed that he felt the compulsory examination was a violation of his constitutional rights. The court proceeded to hold the defendant in contempt of court and he appealed directly to the Supreme Court of Illinois. The court then extensively reviewed the authorities relating to this question:

"As we view the case the issues that must be considered are: (1) whether defendant is protected by the privilege against self-incrimination or by due process from submitting to the mental examination because the information he gives to the psychiatrists will be used in the commitment proceedings under the act; (2) whether he is privileged because the compelled information could be used in a subsequent criminal proceeding; and (3) if the defendant is privileged from submitting to the examination because it may tend to incriminate him, can this privilege be removed by a judcial grant of immunity.

"It is well established that the privilege against self-incrimination protects against disclosure of facts involving

criminal liability and not against civil liability. (Wigmore, Evidence (McNaughton, rev'd 1961) Secs. 2253, 2254). This raises the question, therefore, of the nature of the consequences imposed by the act upon a person found to be sexually dangerous.

"The status of mental illness cannot be made criminal offense for which the offender can be prosecuted and imprisoned. (See *Robinson* v. *California*, 370 U. S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758.) A state may, however, in a civil proceeding adjudicate the status of mental illness and require involuntary confinement of the mentally ill person for treatment and for the protection of society. (See *Robinson* v. *California*, 370 U. S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758; *Lynch* v. *Overholser*, 369 U. S. 705, 82 S. Ct. 1063, 8 L. Ed. 2d 211.) Specifically, the Supreme Court has upheld a Minnesota statute providing for the involuntary commitment of a sexual psychopath in a civil proceeding. (See *Minnesota ex rel. Pearson* v. *Probate Court*, 309 U. S. 270, 60 S. Ct. 523, 84 L. Ed. 744.) Section 3.01 of the Sexually Dangerous Persons Act (par. 105-3.01) provides that the proceeding is civil in nature and this court has so construed it. *People* v. *Sims*, 382 Ill. 472, 47 N. E. 2d 203; *People* v. *Redlich*, 402 Ill. 270, 83 N. E. 2d 736; *People* v. *Capoldi*, 10 Ill. 2d 261, 139 N. E. 2d 776.

"Defendant relies heavily, nevertheless, on the statement in *People* v. *Nastasio*, 19 Ill. 2d 524, 529, 168 N. E. 2d 728, 731, that the proceedings under the act 'closely resemble criminal prosecutions in many critical respects.' That case held that procedural due process requires that a defendant be given the opportunity to confront the witnesses as in a criminal prosecution.

"The fundamental procedural safeguards of the criminal law are explained by history, not by logic. Basic in most of these safeguards is the fear of abuses to the individual's liberty. Since the Sexually Dangerous Persons Act provides for involuntary confinement, although it be for the treatment of the defendant rather than punishment for a crime, it is natural that some of the same safeguards which are applicable in a criminal prosecution be applied to the proceedings under the act. This does not mean, however, that the commitment proceeding is a criminal prosecution or that criminal procedure as a whole must be followed in the proceeding. This is the thrust of the statement in the Nastasio case.

"The Supreme Court in upholding the Minnesota statute stated, 'We fully recognize the danger of a deprivation of

due process in proceedings dealing with persons charged with insanity or, as here, with a psychopathic personality as defined in the statute, and the special importance of maintaining the basic interests of liberty in a class of cases where the law though "fair on its face and impartial in appearance" may be open to serious abuses in administration and courts may be imposed upon if the substantial rights of the persons charged are not adequately safeguarded at every stage of the proceedings.' (*Minnesota ex rel. Pearson* v. *Probate Court,* 309 U. S. 270, 276-277, 60 S. Ct. 523, 527, 84 L. Ed. 744, 751). Indeed, it was this 'special importance of maintaining the basic interests of liberty' in this type of case which led this court to hold in *People* v. *Capoldi,* 10 Ill. 2d 261, 139 N. E. 2d 776, that the admission in evidence of a confession of crime, without preliminary proof of its voluntary character.

"*While the nature of the proceeding under the act is such that due process requires a preliminary hearing to determine the voluntariness of an allegedly coerced confession and the confrontation of witnesses in order to protect defendant from the abuses at which these safeguards are aimed, the same is not true with regard to compelling a psychiatric examination to determine his status as a sexually dangerous person.* Since no criminal liability is attached to the status of a sexually dangerous person, the evil at which the privilege is aimed is not present when the compelled examination shows no more than the existence or nonexistence of this status. The same conclusion has been reached in other jurisdictions as to sanity proceedings, in general (8 Wigmore, Evidence, (McNaughton, rev'd 1961) Sec. 2257), sanity proceedings in connection with a criminal case, in particular, (Annotation, 32 A.L.R. 2d 437, 444) and specifically as to proceedings under statutes similar to ours. Annotation, 24 A.L.R. 2d 350, 362." (Our emphasis)

It is to be noted in the Illinois case that the act did not specifically protect the defendant against self-incrimination. However, the Indiana statute that we have under consideration specifically provides that the information or admissions obtained in the medical examination "shall not be deemed to be competent evidence in any other proceeding brought against the accused. . . ." It therefore follows that there can be no violation of the constitutional pro-

vision against self-incrimination under the Indiana statute, since the testimony or evidence given is by statute no longer incrimination. (Burns' Ind. Stat. Anno. § 9-3403(d) [1967 Supp.])

Under the Indiana statute, and in this particular case, the relator has at all times been represented by counsel, has the right to be confronted by witness, is protected by the immunity clause of the statute and has a specific right of appeal. See Burns' Ind. Stat. Anno. § 9-3404, *supra*; also Burns' Ind. Stat. Anno., § 9-3406 [1956 Repl.].

> "An appeal may be taken from any final order or judgment of the court herein in the manner provided by law for appeals in criminal cases." [Acts 1949, ch. 124, § 6, p. 328.]

There is no question that there are many problems arising with psychiatric examinations. In a recent publication, *Psychiatry for Lawyers Handbook* by Dr. Melvin L. Selzer, published by the Institute of Continuing Legal Education, University of Michigan, there is reprinted an article "Psychiatric Examination of the Sexual Psychopath" published in the journal of Northwestern School of Law, Vol. 56, No. 1, p. 27, which states:

> "A continuing and somewhat disturbing problem in medico-legal matters is the accurate determination of sexual psychopathy. It is surprising that more insistence upon accuracy does not prevail when it concerns the lives of those involved to such a major degree. A label of sexual psychopathy carries with it an immediate penalty which may take freedom from the individual for periods varying from months to a lifetime and in addition place a social stigma that possibly may never be removed. It is a process that is easy to impose, but very difficult to erase. A dire responsibility rests upon those entrusted to render opinions in this area, for an error will either continue a threat to society or deprive the accused of his way of life. Laws were made to accomplish a purpose, to protect society from those who are hazards or potentially so. Sexual psychopathy laws are designed to cope with a difficult situation and are intended to be fair, as well as supply the protection needed."

We believe that the Indiana statute has been designed to cope with this difficult situation and is equitable. It also supplies the constitutional protection needed. The statute in question was examined in *State ex rel. Savery etc.* v. *Marion Cr. C., etc.* (1955), 234 Ind. 632, 130 N. E. 2d 128. In that case the relator sought to compel a lower court ruling to proceed under the statute although the proceedings were not requested by the prosecuting attorney for the court. The court held that the proceedings under the statute were civil in nature although they may have been instituted as the result of criminal proceedings. The purpose of the law was described as follows: (234 Ind. 632, 637.)

> "The purpose of the proceedings and confinement under the act is primarily to protect society against such persons regardless of criminal guilt. Courts have upheld analogous proceedings for commitment of drug addicts, inebriates, delinquents, dipsomaniacs and similar persons. Through the entire field of legislation dealing with this human wreckage of society, there is a pervading feeling that sexual offenders and similar persons require special treatment since punishment normally is not a deterrent to a repetition of the offense. Institutional treatment offers also better protection to society. Although it is no panacea, it, at least, is a more enlightened approach in search of a better solution of an old social problem. Such proceedings are civil in nature even though they may have their origin or be instituted as a result of criminal proceedings. 25 Indiana L. J. 186."

In the same opinion this court reviewed such cases from other jurisdictions which supported the court's conclusion that the proceedings under the statute are civil in nature rather than criminal although originating in a criminal proceeding.

Laws providing compulsory medical treatment for the mentally ill, drug addicts and other similar persons have as their purpose the treatment of individuals regardless of criminal guilt and with emphasis on rehabilitation for the individual involved.

It is likewise true in regard to due process of law. 24 A.L.R. 2d 350, 362. In *Noelke* v. *State of Indiana* (1938), 214 Ind. 427, 15 N. E. 2d 950, this court held that our statute authorizing the court to appoint physicians to examine a defendant who has pleaded insanity and to testify as to their conclusions in the criminal trial was not unconstitutional as compelling defendant to incriminate himself. Attacks on the constitutionality of statutes authorizing courts to appoint impartial examiners to determine the mental condition of a defendant have generally been unsuccessful and particularly on the theory of self-incrimination. See 32 A.L.R. 2d 434, p. 445. Alabama, Arkansas, California, Colorado, Indiana, Louisiana, Massachusetts, South Carolina and Wisconsin have held similar statutes constitutional.

There is still another reason why the relator cannot prevail in this case, namely, the statute specifically gives the defendant in the proceedings in question the right to appeal. It states: "An appeal may be taken from any final order or judgment of court in the manner provided by law for appeals in criminal cases." (Burns' Ind. Stat. Anno. § 9-3406.)

Rule 2-35 of this Court further provides: "Writs will be granted only where extreme hardship would otherwise result if not granted." It is fundamental that extraordinary writs may not be used as a short-cut for an appeal. *State ex rel. Wireman* v. *City of Lafayette* (1967), 249 Ind. 490, 230 N. E. 2d 776.

The temporary writ heretofore issued is dissolved, and the permanent writ is denied.

Lewis, C. J. concurs.

Mote, J. concurs with opinion.

Jackson, J. dissents with opinion, in which Hunter, J. concurs.

NOTE.—Reported in 234 N. E. 2d 636.

## Concurring Opinion

Mote, J.—I concur in the opinion and the conclusion of Judge Arterburn. In doing so, it appears appropriate to express my views upon the general subject before us, as presented by a Petition for Writ of Mandate and Prohibition and the Response thereto.

The factual situation already is clearly presented. There is involved, however, an overall philosophy to which I wish to address myself.

In these times of abrupt and almost complete reversal of attitudes regarding constitutional government, it seems to me that too often we have been compelled by enigmatic forces to adjust our solutions to perplexing moral, philosophical and economic problems for the benefit of the thorough non-conformist at the expense of conformity, that is, an ordered society with reasonable rules and regulations for our guidance. For one, I do not read the provisions of our Bill of Rights, the various amendments to our Federal Constitution, to have the import so often thereto attributed in high places.

It has been said that a prerequisite to the favorable acceptance of the proposed Constitution of the United States was the prompt adoption thereafter of our Bill of Rights. Careful study of the times, the reasons, the sense and feeling of the early colonists reasonably should induce the objective conclusion that those residing in the early colonies were solicitous of their own local rights and powers in relation to the central government. Little did they expect or contemplate that what they sought and were granted, much in mysterious and deceiving ways, eventually would operate as a sword instead of a shield.

While we do not here criticize the often-cited and relied upon *Escobedo* and *Miranda Cases*, we must remark that the pitfall in to which they have lead us produces a good example of the "adjustment" referred to above when, in order to pre-

vent an avalanche of court proceedings for freedom, a "cut-off" date had to be employed.

The field of mental health long has been the subject of much consideration. Full enlightenment surely has not yet been achieved; however, our society appears to have made great strides in the field of treatment and in the protection and attempt to help those poor unfortunates who, through no fault of their own, are unable to fully participate and to compete in citizenship.

It is my considered opinion that Relator herein has been accorded the fullest protection under our statutes and that he has not been harmed by the order of the trial court, Respondent herein, which carefully has followed the provisions of the governing statutes. Nor will the Relator be harmed by the questions likely to be propounded and answered by him.

First, he may be heard in the trial forum before admission of the questions and his answers. Second, being civil in nature, his answers may not be used against him in any proceeding, criminal or otherwise, but the one designed to determine whether he is a sexual psychopathic person under the provisions of § 9-3401, et seq., Burns' Ind. Stat. Anno. Third, as above stated, Relator has not yet been harmed, nor will he be, in light of the protective measures afforded him, to-wit: appropriate if not availing objections at the trial on the issues of whether he is a sexual psychopathic person and his right of appeal, wherein this Court will have before it the full and complete record for review.

In my opinion, the authorities in Indiana and elsewhere, cited by Judge Arterburn, amply support his conclusion to deny the Petition and I therefore concur with him.

### DISSENTING

JACKSON, J.—I am unable to agree with the conclusions reached in the majority opinion and dissent thereto.

Criminal proceedings were instituted against the relator on November 27, 1961, when an affidavit was filed in the respondent court charging him with being a "Peeping Tom."

On November 30, 1961, the State of Indiana filed a petition to determine whether the relator was a criminal sexual psychopath pursuant to the Criminal Sexual Psychopathic Persons Act, Acts 1949, ch. 124, p. 328, as amended, being § 9-3401, et seq. Burns'. On April 4, 1962, after two qualified physicians filed their reports, the respondent court found relator to be a criminal sexual psychopath and ordered him committed to the Division of Mental Health of the State of Indiana. Subsequently the relator filed a belated motion for new trial which was sustained by the respondent court on July 20, 1967. On July 28, 1967, the prosecuting attorney filed a motion for the appointment of physicians to examine relator. On September 20, 1967, the respondent court ordered the relator to be re-examined by two qualified physicians. By the terms of the order the relator was required to answer all questions propounded to him by the physicians. Relator filed a motion to strike the words "and to answer all questions put to him by said physicians and each of them" from the order. The motion to strike was overruled. The relator now seeks this Court to mandate the respondent court to sustain the motion to strike.

The language of the statute and the order of the respondent court violates the relator's right against self-incrimination as guaranteed by the 5th and 14th Amendments to the Constitution of the United States. The majority holds that the statute does not constitute a violation of relator's privilege against self-incrimination because "the proceedings under the statute are civil in nature rather than criminal although originating in a criminal proceeding." It is of little significance that the proceedings are civil in nature. A person found to be a sexual psychopath under the Act is deprived of his liberty as a consequence, and must be accorded the protections of due process. Neither sound logic nor fundamental

justice dictates that the constitutional protectives may be ignored in civil proceedings and must be followed in criminal proceedings. The end result under the Act is incarceration for an indeterminate period of time against one's will. An individual exposed to a procedure that can result in his incarceration is entitled to his privilege against self-incrimination regardless of the euphemistic characterization of that procedure.

The very title of the Act negates the argument that the proceedings are civil rather than criminal. The determination, if and when made, is that "such person is . . . a *criminal* sexual psychopath." Acts 1949, ch. 124, § 4, p. 328, as amended, being § 9-3404 Burns'. The Act also provides for appeals "in the manner provided by law for appeals in criminal cases." Acts 1949, ch. 124, § 6, p. 328, being § 9-3406 Burns'.

Section 3 of the Act, § 9-3403 Burns', provides:

> "When any person is charged with a criminal offense, *except the crime of murder or manslaughter, or rape on a female child under the age of twelve* . . . and *it shall appear* that such person is a *criminal* sexual psychopathic person, then the prosecuting attorney of such county, or someone on behalf of the person charged, may file with the clerk of the court in the same proceeding wherein such person stands charged with . . . such criminal offense, a statement in writing setting forth facts tending to show that such person is a criminal sexual psychopathic person." (Emphasis supplied)

If the purpose of the statute is to protect society against sexual psychopaths and to provide medical treatment for them, regardless of criminal guilt, the above section is an arbitrary classification of the group to be covered by the statute. It is well known that many murders are committed as a result of a criminal sexual psychopathic mind. Certainly a large number of statutory rapes are committed by persons who are suffering from mental abnormalities. If the statute is to apply to some sexual deviates, it must apply to all.

The above section is further defective because of vagueness. The statute is silent as to *whom* "it shall appear that such person is a criminal sexual psychopathic person."

The unconstitutionality of the Act has been further pointed out by Judge Emmert in his concurring opinion in *State ex rel. Savery* v. *Marion Criminal Court* (1955), 234 Ind. 632, 643, 130 N. E. 2d 128.

"Section 4, § 9-3404, Burns' 1942 Replacement, Supp., places a mandatory duty upon the court to appoint two physicians if the statement is made by the prosecuting attorney, but gives the court a discretionary power to appoint the physicians if the statement is filed in behalf of the defendant. This section further makes it clear that unless the two physicians agree in their written reports to the court that the defendant is a criminal sexual psychopathic person, the issue cannot be tried and determined. Section 5, § 9-3405, Burns' 1942 Replacement, Supp., provides for notice and hearing by the court without a jury, and a commitment to the Indiana Council for Mental Health if the defendant is found to be a criminal sexual psychopathic person.

Section 9 of the act, § 9-3409, Burns' 1942 Replacement, Supp., provides as follows:

'No person who is found in such original hearing to be a criminal sexual psychopathic person, and such finding having become final, may thereafter be tried or sentenced upon the offense with which he originally stood charged, or convicted, in the committing court at the time of the filing of the original petition.'

It is impossible to construe the statement alleging the defendant is a criminal sexual psychopathic person as a defense to a criminal charge as is the case under § 9-1132 and § 9-1701, Burns' 1942 Replacement. It cannot be a defense to the action, because it puts it within the power of the prosecuting attorney, the court and the two examining physicians to say whether the issue shall be tried. That denial of the defendant of the right to present such defense would certainly be a denial of due process of law under the Fourteenth Amendment and due course of law under § 12 of Art. I of the Indiana Constitution. Moreover, the statement can be filed after conviction or a plea of guilty, which makes it perfectly clear the matter is not one of defense

to the action. Nor is the defendant given the right to present evidence that he is in fact a criminal sexual psychopathic person, even if he obtains the most eminent and distinguished psychiatrists in the land as his witnesses, if the two physicians appointed by the court fail to agree he is such a psychopathic person.

Since the issue is not one of defense, and since finding that the defendant is such a psychopathic person brings into operation § 9 of the act which prohibits a trial, or sentence on the original charge even after conviction, the act is clearly unconstitutional in that it gives the court the power to grant a pardon after conviction, in violation of § 17 of Art. V of our Constitution which vests the sole power of pardon in the governor. We cannot construe the act as one granting amnesty. 39 Am. Jur., p. 525, § 10. There have been various definitions as to what constitutes pardon. In substance 'a pardon is a declaration on record by the chief magistrate of a state or country that a person named is relieved from the legal consequences of a specific crime.' 39 Am. Jur. 523. See also *Biddle* v. *Perovich* (1927), 274 U. S. 480, 47 S. Ct. 664, 71 L. Ed. 1161, 52 A.L.R. 832. But under the act the Governor does not declare of record the defendant is to be relieved from the legal consequences of his specific crime charged, hence the act's unconstitutionality.

Sections 3 and 4 also offend § 23 of Art. I of our Bill of Rights, by granting a privilege and immunity to one defendant not granted on equal terms to other defendants. Many different crimes may be the result of a criminal sexual psychopathic mind. For instance, two defendants who are in fact criminal sexual psychopathic persons may each be charged with arson, which can be the product of a sexual psychopathic mind. W. Norwood East, Sexual Offenders— A British View, 55 Yale Law Jl. 527, 551. In one prosecution the prosecuting attorney may file a statement that the defendant is a sexual psychopathic person, in which event the court must appoint two physicians, who may both confirm the statement. But in the other case, the prosecuting attorney may refuse to file a statement, and the court may refuse to appoint the two physicians on the statement of the defendant, yet both defendants are sadists, and one obtains a privilege and immunity not afforded the other. If a statute should declare that a convicted defendant had the right of appeal if the prosecuting attorney consented, but no right of appeal on a defendant's own motion without the consent of the prosecuting attorney, such a statute would

clearly be a denial of equal protection of the laws under the Fourteenth Amendment.

. . . .

This court is not in a position to say the General Assembly would have passed the act had they known that § 9, granting the power to pardon, was unconstitutional, nor is the remainder of the act workable without the jurisdictional provisions concerning the filing of the statement presenting the issue to the court. In the absence of such procedure the entire act becomes unworkable. Where certain provisions of an act are unconstitutional, 'and the remainder of the act is not complete and not possible of performance, the whole act is void and invalid. *Kelso* v. *Cook* (1916), 184 Ind. 173, 181, 110 N. E. 987, Ann. Cas. 1918E 68.' *Keane* v. *Remy* (1929), 201 Ind. 286, 295, 168 N. E. 10." 234 Ind. at 646-648, 649.

The Act is unconstitutional for several other reasons. It violates Article I, Sec. 19 of the Constitution of Indiana which guarantees a criminal defendant the right to have a jury determine the law and the facts. The Act also flies in the face of Article I, Sec. 13 of the Indiana Constitution which provides that a criminal defendant has the right to know definitely the charge he is compelled to meet and the right to have a trial by an impartial jury. In Indiana all crimes are statutory, and the defendant's guilt must be proved beyond a reasonable doubt. Yet under the terms of this Act it is possible, even probable, that the accused can be involuntarily incarcerated for life by commitment to the Indiana Council for Mental Health without ever having committed any crime nor having been convicted of committing any crime.

This Court, here sitting in equity, should grant relator not only the relief prayed for in his petition but the complete relief to which he is entitled, viz: a finding and judgment that the entire Act, Acts 1949, ch. 124 as amended by Acts 1959, ch. 356, is unconstitutional and void. A permanent writ should be granted prohibiting the respondent from enforcing or attempting to enforce any of the provisions of the Act.

Hunter, J. concurs.

NOTE.—Reported in 234 N. E. 2d 636.