LEWIS POMEROY RHIVER *v.* H. JEROME RIETMAN.

[No. 369A51. Filed December 28, 1970. Rehearing denied February 4, 1971. Transfer denied April 2, 1971.]

*Russell S. Armstrong, Paul Wever, Phillip L. Kiely,* of Evansville, for appellant.

*Fred P. Bamberger, Bamberger, Foreman, Oswald & Hahn,* of counsel, of Evansville, for appellee.

SULLIVAN, J.—In the action below the appellant-plaintiff charged the appellee, a physician, with negligence in the rendering of a medical opinion and report concerning appellant's mental condition. The report had been submitted to a court entering a petition for temporary commitment of appellant. Appeal was taken from a ruling which sustained defendant's summary judgment motion and from the judgment entered for defendant.

In this third amended complaint the plaintiff-appellant asserted "that on or about the 20th day of June, 1961, defendant did, at the request of plaintiff's wife, carelessly and negligently make and render a medical opinion and report to the effect that plaintiff was in such a condition mentally that he should be institutionalized for treatment * * *." The subject of appellant's charge was the following form report submitted by the plaintiff:

"I, *H. Jerome Rietman,* M.D. of *Evansville* in the County of *Vanderburgh,* Indiana, do hereby certify that I am licensed

to practice medicine in the State of Indiana; that on the *7th* day of *March, 1961,* I did carefully and personally examine *Lewis P. Rhiver* and believe *him* to be suffering from mental illness, and I am of the opinion that he is a proper person for admission to a State Psychiatric Hospital (School). I have observed the following facts regarding *his* mental condition: *Had been admitted to St. Mary's Hospital on March 3, 1961, after having become confused, agitated and depressed at home. He adjusted reasonably well in the hospital for several days, but then without apparent reason became extremely irritable, hostile and unreasonable. He was quite abusive to his wife and hospital personnel and left the hospital without permission. I have not seen him since March 7, 1961. His family has informed me that he has recently become increasingly violent toward wife, threatening to kill her and their son. He has been using poor judgment around home, selling expensive appliances and piano for a fraction of their worth. I have also been informed that his actions at work have indicated suspiciousness, irritability and unreasonable thinking and behavior."* (Emphasis indicates defendant's entries in form report)

Upon conclusion of the temporary commitment proceeding appellant was ordered held in protective custody. He was then transferred to a hospital where he underwent observation until his release two days later. Soon thereafter, suit was filed.

On appeal, the primary issue is whether a physician has immunity against civil actions based upon statements given by him in aid of a mental illness commitment proceeding. In addressing ourselves to this issue we must, in the absence of applicable Indiana case law, turn to the decisions of our sister states. Most actions arising from mental health reports are grounded upon the defamatory nature of such reports, and in that regard the following principle as set forth in 73 A. L. R. 2d, Anno. 324, 333, seems to prevail:

"The general rule that otherwise defamatory statements made in testimony, pleadings, or other papers in judicial proceedings are absolutely privileged, if material to the inquiry, has been applied in a number of actions against physicians for defamation by an affidavit, certificate, or testi-

mony given in connection with a proceeding to commit an alleged lunatic to a mental institution." 73 A. L. R. 2d 333.

Moreover, the privilege of a witness in a commitment proceeding has been affirmed whether the liability is later asserted for libel or slander, or false imprisonment, or malicious prosecution. *Underwood* v. *Woods,* 406 F. 2d 910 (8 Cir. 1969, applying Missouri law) ; *Fisher* v. *Payne* (1927), 93 Fla. 1085, 113 So. 378; *Mezullo* v. *Maletz* (1954), 331 Mass. 233, 118 N. E. 2d 356; *Dunbar* v. *Greenlaw* (1956), 152 Me. 270, 128 A. 2d 218; *Bailey* v. *McGill* (1957), 247 N. C. 286, 100 S. E. 2d 860.

## IMMUNITY FROM CIVIL LIABILITY OF CERTIFYING PHYSICIAN IN COMMITMENT PROCEEDING

In Indiana, as in most states, the process for commitment of an individual alleged to be mentally ill must begin with a citizen's sworn statement alleging mental illness. Ind. Ann. Stat. § 22-1212 (Burns' 1970 Supp.), provides that:

"* * *  The allegation shall be accompanied by a statement made by a qualified physician that he has examined the person who is alleged to be mentally ill and setting forth therein such facts in regard to the mental, physical and other conditions of such person as shall be prescribed and required * * *"

Under Ind. Ann. Stat. § 22-12-13, (Burns' 1970 Supp.),

"* * * The judge may * * * issue subpoenas for the person making the allegation of mental illness, for the attending physician, for witnesses, for the person alleged to be mentally ill, and for such other persons as in the judgment of the judge may be cognizant of any facts relating to the case * * *"

The true nature of the role played by the examining physician in a commitment proceeding, however, is perhaps no better stated than in *Dunbar* v. *Greenlaw, supra,* a Maine case in which negligence was alleged in the physician's preparation of an insanity certificate. The court there said:

"The role and function of the examining and certifying physician in insanity detention and commitment cases are those of a witness. He does not institute the process. * * * The physician is not the judge * * * His opinion is of serious public interest. It is of grave import to the individual alleged to be insane. Immediate treatment for the benefit of one mentally ill, danger to him or to others from his enlargement, the exercise of proper police power by the state and the safeguarding of the inviolable, personal rights of an individual are some of the urgent consults * * *" 128 A. 2d 218, 221.

That the physician acts in aid of and not as a principle in the commitment proceeding was long ago recognized by the majority in *Niven* v. *Boland* (1900), 177 Mass. 11, 58 N. E. 282:

"* * * It is important that the judges who are charged with the duty of investigating cases of dipsomania or inebriety and insanity should have the assistance, in forming their conclusions, of persons whose profession is such as to give to their opinions peculiar value in such matters. The statute recognizes this by requiring the certificate. And we think that the privilege which attaches to parties and witnesses in other judicial proceedings * * * should attach to examining physicians in cases like the present * * *. 58 N. E. 282, 283.

As the majority in *Dunbar, supra,* concluded:

"The doctrine of the privilege of protection from tort liability to witnesses for pertinent recitals in judicial proceedings is well established * * * The privilege includes the certifying physician in lunacy proceedings who acts within the scope of the privileged occasion. * * * The law, no doubt, deems it prudent to provide against the possibility of a too apprehensive physician depriving a person mentally ill of any speedy care, treatment or protection indicated or failing to protect the public from a serious menace. There is a dearth of psychiatrists available and it falls upon practicing physicians for want of specialists to furnish the certificates in lunacy cases. If there is sufficient sanction for the general doctrine exempting witnesses in judicial proceedings from tort liability for pertinent testimony, the rule is equally cogent for obtaining the objective judgment of physicians in lunacy commitments and detentions.

"Against the likelihood of intentionally false certificates there is a strong deterrent in the criminal law. Conspiracy, wilful perjury, intentional, false certifications and deliberate, false reports in lunacy commitment proceedings and the wilful attempt to cause or the causing of the commitment of the sane are constituted and made punishable as criminal felonies." 128 A. 2d 218, 223, 224.

See also *Niven* v. *Boland, supra.* Such holding is in line with controlling Indiana authority on the presumption of privilege of a witness. *Hutchinson* v. *Lewis* (1881), 75 Ind. 55. As further noted in *Baldwin* v. *Hutchison* (1893), 8 Ind. App. 454, 457, 35 N. E. 711:

"* * * 'Public policy, and the safe administration of justice, require that witnesses, who are a necessary part of the judicial machinery, be privileged against any restraint, excepting that imposed by the penalty for perjury.' "

As a matter of public policy immunity must attach to witnesses aiding commitment proceedings. If it were otherwise the cooperation of physicians, who *by statute* are called upon to offer expert judgment upon the sanity of another, would be lost. Fear of vexatious litigation would thwart the power of the state to provide for protection of the community against the psychopathic mentally ill, and for protection of the mentally ill individual against himself. It is out of concern for the treatment, and not for the sequestration, of the mentally ill individual that a swift, sure method of determining the need for institutionalization must be followed. Immunity is a central consideration to this noble goal. We are not here called upon nor do we purport to decide or comment upon the existence of the physician's privilege if his testimony or statement is made with malice or perverse motive.

We think the examining physician's privilege from civil liability may be qualified where malpractice is demonstrated. Here, however, the plaintiff did not allege that the defendant failed to perform accepted and essential tests, or that he performed accepted tests in a negligent man-

ner. Rather, the plaintiff alleges "that on or about the 20th day of June, 1961, defendant did . . . carelessly and negligently *make* and *render* a medical *opinion* and *report* to the effect that plaintiff was in such a condition mentally that he should be institutionalized." (Emphasis supplied) The defendant here cannot, as a matter of law, be held liable in negligence for his subjective opinion as to the plaintiff's mental condition; nor can he be held liable for the memorialization of that opinion in the form of a written report.

## NEGLIGENCE AS PROXIMATE CAUSE OF COMMITMENT

It is a universally recognized principle that recovery upon a negligence theory requires proof of the tortfeasor's act, or failure to act, as a proximate cause of plaintiff's injuries. No less a standard is required where negligence is allegedly involved in mental illness commitment proceedings. It thus becomes the burden of the plaintiff to show an unbroken chain of events from the negligence of the physician to the commitment of the plaintiff. In this case the appellee argues that negligence, if any, of a reporting physician can not be the proximate cause of a plaintiff's injuries since the chain of events is necessarily interrupted by an efficient intervening cause in the person of the committing judge.

The responsibility for determination of a citizen's need for institutional mental treatment has been placed by the Indiana Supreme Court in the committing judge. *In Re Mast* (1940), 217 Ind. 28, 31, 25 N. E. 2d 1003. The Supreme Judicial Court of Massachusetts, in dealing precisely with the relation of the judge to the commitment, stated in *Mezullo* v. *Maletz* (1954), 331 Mass. 233, 118 N. E. 2d 356, 357, *supra:*

"* * * although the certificate of the examining physicians in a commitment proceeding is intended to, and does in practice, have great weight, a commitment cannot take place without an order from the judge, and a finding by him that the person committed is insane. * * *"

The judge was thus concluded to be an efficient intervening cause, in denial of plaintiff's right to recovery in negligence:

"* * * It is difficult to see, therefore, how, assuming that there was negligence in the examination, and that the certificate was false, it can be said that that was the proximate cause of the commitment. * * *" 118 N. E. 2d 356, 358 (quoting from Niven v. Boland [1900], 177 Mass. 11, 58 N. E. 282, 283)

We subscribe to the wisdom and correctness of that decision.

## PRESENT COMMITMENT PROCEDURE BARES INHERENT DANGERS

While we are content that the ends of justice and equity were dutifully served in this case, we cannot remain mute in the face of obvious structural defects of the law regarding civil commitment proceedings. Under the present law the judge is empowered to deprive the liberty of an individual alleged by any citizen or out-of-state relative to be mentally ill. He can refer to affidavits of the petitioner and a physician concerning the mental condition of the patient; he may require additional testimony or other evidence as to the patient's mental condition, or he may reject all such evidence and make a decision on less tenable grounds. By virtue of the summary nature of the proceeding the judge has complete discretion to order or refuse commitment, and the cloak of judicial immunity protects him against liability for an erroneous decision. It is only after circumspection that we ultimately find ourselves in agreement with Professor Wigmore in his commentary concerning commitment procedures which require only a physician's certificate:

"* * * Many of the statutes are satisfied with the physician's affidavit or certificate; but this is dangerous and intolerable, considering that a citizen's permanent liberty is involved, and that medical men vary in their sense of responsibility, their thoroughness, and their disinterestedness. * * *" Wigmore on Evidence (3rd ed. 1940), § 2090

While Wigmore's views are directed more to regular commitments than to the temporary commitment considered in this case, they reflect an extant and opprobrious state of our mental health laws.

It is not within our constitutional power to legislate remedial measures in this area, nor would we attempt to undermine the abiding deference traditionally shown by the judicial branch of Government to the province of its equal.

We are not unmindful either of the self-incriminatory dangers inherent in involuntary commitment proceedings as noted in *Haskett* v. *State* (1970), 255 Ind. 206, 263 N. E. 2d 529, 23 Ind. Dec. 390, particularly in the concurring opinion by Chief Justice Hunter, wherein it was stated in quoting from *State ex rel. Haskett* v. *Marion County Criminal Court, Div. 1* (1968), 250 Ind. 229, 234 N. E. 2d 636:

> " 'Neither sound logic nor fundamental justice dictates that the constitutional protectives may be ignored in civil proceedings and must be followed in criminal proceedings. The end result under the Act is incarceration for an indeterminate period of time against one's will. An individual exposed to a procedure that can result in his incarceration is entitled to his privilege against self-incrimination regardless of the euphemistic characterization of that procedure.' [13 Ind. Dec. at 231], 234 N. E. 2d at 643." 23 Ind. Dec. 396.[1]

---

1. It is of interest, however, to note a somewhat contrary approach to the self-incrimination aspects of commitment matters as contained in the *Proposed Rules of Evidence for the United States District Courts and Magistrates,* as set forth in 46 F.R.D. 161 at 258 (1969), wherein an exception is made to the usual and proper "Doctor-Patient" privilege insofar as it precludes disclosure of otherwise confidential communications. The Proposed Rule 5-04(d)(1) states:

"PROCEEDINGS FOR HOSPITALIZATION. There is no privilege under this rule for communications relevant to an issue in proceedings to hospitalize the patient for mental illness, if the psychotherapist in the course of diagnosis or treatment has determined that the patient is in need of hospitalization."

The Comments of the Advisory Committee which drafted said Rules state the rationale for such exception as follows:

"The interests of both patient and public call for a departure from confidentiality in commitment proceedings. Since disclosure is authorized only when the psychotherapist determines that hospitalization

But unless at some future time our Supreme Court should specifically so state, such dangers are not cognizable in proceedings such as here considered.

After careful consideration of the points presented by counsel either during oral argument or in the briefs, we find that no cause of action was stated by plaintiff here. The trial judge was correct in his ruling on defendant's motion for summary judgment. It should be noted, however, that in our affirmance of the Knox Circuit Court we do not intend condonation of the earlier decision by the committing court (not the Knox Circuit Court) in considering the petition for temporary commitment, nor do we wish to necessarily indicate approval of that court's order for commitment of the appellant.

Affirmed.

Lowdermilk, C.J., Carson and Lybrook, JJ., concur.

NOTE.—Reported in 265 N. E. 2d 245.

is needed, control over disclosure is placed largely in the hands of a person in whom the patient has already manifested confidence. Hence damage to the relationship is unlikely." 46 F.R.D. 161, 262.