**John REID, M.D., Appellant–Plaintiff,**

v.

**Rex RAGSDALE, M.D., John K. Browning, Thomas F. Liffick, M.D., and Deaconess Hospital, Inc., Appellees–Defendants.**

No. 82A01–9802–CV–52.

Court of Appeals of Indiana.

Nov. 23, 1998.

---

**368**

Jack N. Vanstone, Evansville, for Appellant–Plaintiff.

William E. Statham, Statham, Johnson & McCray, Evansville, for Appellees–Defendants.

1. Reid failed to present any argument regarding John K. Browning or Deaconess Hospital. Therefore, his claim that the trial court erred in granting summary judgment in favor of those two parties is waived. Ind. Appellate Rule 8.3(A)(7).

## OPINION

STATON, Judge.

John Reid, M.D. appeals from the grant of summary judgment in favor of defendants Rex Ragsdale, M.D.; John K. Browning; Thomas F. Liffick, M.D.; William Wooten, M.D.; and Deaconess Hospital, Inc.[1] Reid raises three issues for our review, one of which is dispositive. That issue is: whether the trial court erred in finding that a judge's approval of an involuntary commitment was an efficient intervening cause, thereby cutting off the doctors' liability.

We affirm.

Reid was involuntarily committed to a mental hospital on the night of January 12, 1995. The facts leading up to this commitment are as follows: On January 11, 1995, Dr. Wooten, chairman of the Physician's Assistance Committee of Vanderburgh County, called Dr. Liffick, the medical director of the Southwestern Indiana Mental Health Center, to inquire about involuntary commitment procedures, explaining that a doctor at Deaconess Hospital was a potential danger to himself and others. The following day, Dr. Wooten called Dr. Liffick and asked that involuntary commitment proceedings be initiated for Reid. Browning, the executive director of the Southwestern Indiana Mental Health Center, signed the Application for Emergency Detention, alleging that Reid may be a potential danger to himself or others and that he should be involuntarily committed. Dr. Liffick filled out the Physician's Emergency Statement form, alleging that Reid might be mentally ill and dangerous, based on information he had received from Dr. Ragsdale, a vice president at the hospital where Reid worked. Around 3:30 that afternoon, Dr. Liffick called a trial court judge and asked that the judge authorize Reid's detention and commitment. The judge agreed, based on information that Dr. Liffick recited to him over the phone.[2] The

2. The judge did not have access to the actual Application for Emergency Detention at that time, as it was after business hours and the Vanderburgh County emergency commitment procedures were being implemented. These procedures allowed doctors to obtain judicial approval for emergency commitments over the phone after 3 p.m.

application for emergency detention was subsequently signed by another judge.

Reid brought a medical malpractice action against all of the doctors involved in his emergency commitment, as well as Browning, who had filled out a portion of the application. The doctors and Browning sought a preliminary determination of law, asking the court to enter summary judgment based on the fact that there was no doctor-patient relationship between any of the defendants and Reid, or that even if such a relationship existed, the defendants were not the proximate cause of Reid's harm. The trial court entered summary judgment for the doctors, finding that no physician-patient relationship existed.[3] In addition, the trial court found that the judge's approval of the emergency commitment was an efficient intervening cause of the harm, and that none of the named defendants was the proximate cause of Reid's injury. Reid appeals.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

In this case, the trial court entered specific findings of fact and conclusions of law thereon. Specific findings and conclusions are neither required nor prohibited in the summary judgment context. *Althaus v. Evansville Courier Co.*, 615 N.E.2d 441, 444 (Ind.Ct.App.1993), *reh. denied.* Although specific findings aid appellate review, they are not binding on this court. *Id.* Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh evidence, but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

Reid contends that the trial court erred in finding that the judge's approval of the Application for Emergency Detention was an efficient intervening cause. We disagree. The emergency detention statute, specifically IND.CODE §§ 12–26–5–1 and 2 (1993 and Supp.1994), sets forth the process for obtaining an emergency detention. The application for such detention must contain both:

(1) a statement of the applicant's belief that the individual is

(A) mentally ill and either dangerous or gravely disabled; and

(B) in need of immediate restraint, and

(2) a statement by at least one (1) physician that, based on . . .

(B) information given the physician,

the individual may be mentally ill and either dangerous or gravely disabled.

IC 12–26–5–1(b). In addition, the application must be endorsed by a judicial officer who is authorized to issue a warrant. IC 12–26–5–2(a).

The trial judge relied on *Rhiver v. Rietman*, 148 Ind.App. 266, 265 N.E.2d. 245 (Ind.Ct.App.1970), *trans. denied*, in entering summary judgment on the efficient intervening cause. In *Rhiver*, a man was placed in a mental institution after a commitment proceeding, wherein the defendant doctor had submitted what the man claimed was negligent information about his mental state. The *Rhiver* court held that "the responsibility for determination of a citizen's need for institutional mental treatment has been

---

**3.** One of the issues Reid raises on appeal, which we need not address, is whether the trial court erred in finding that there was no physician-patient relationship between any of the defendant doctors and Reid. For purposes of this appeal, we will assume without deciding that a physician-patient relationship existed.

placed by the Indiana Supreme Court in the committing judge." *Id.* 265 N.E.2d at 249 (citing *In Re Mast,* 217 Ind. 28, 31, 25 N.E.2d 1003 (1940)). Further, the court in *Rhiver* held that while the opinion of the doctor weighs heavily in such a proceeding, the ultimate decision whether or not to confine the person is the judge's. Therefore, even if the doctor's examination and report to the judge were negligent, that negligence could not be the proximate cause of the commitment. *Id.* (citing *Mezullo v. Maletz,* 331 Mass. 233, 118 N.E.2d 356, 358 (1954)).

■ Reid argues that the judge was negligently given false or unverified information, and thus, that the doctors who provided that information were the proximate cause of his harm. Even assuming the doctors were negligent, *Rhiver* makes clear that *negligent* behavior cannot be the proximate cause of the harm, because of the committing judge's intervention. Too, the general assembly has manifested its intent that there be a quick and uncomplicated emergency process for detaining those people who pose a harm to themselves or others. The emergency detention statute does not require personal knowledge by the person making the application, nor does it require an examination by the physician who endorses the application. The statute's only requirements are the applicant's *belief* that the person to be detained meets the statutory criteria, and the physician's statement that the person *may be* mentally ill and dangerous. IC 12–26–5–1 (emphasis added). Imposing liability on individuals and doctors who, in good faith, provide the court with an opinion regarding a person's grave disability or dangerous propensity, in compliance with IC 12–26–5–1, would contravene the legislature's intent in creating the emergency detention process.

Reid has designated no evidence showing that these statutory criteria were not met. Nor does the evidence designated by Reid establish that the information given to the judge was false or given in bad faith. Reid's designations only show that the doctors did not examine him or talk to him prior to their

application for emergency detention. This negligence that Reid alleges cannot be the proximate cause of Reid's harm. As in *Rhiver*, the ultimate decision was up to the judge who endorsed the commitment. The trial judge in the present situation obviously felt that the information presented to him by Dr. Liffick was enough to warrant emergency detention.[4] Therefore, as a matter of law, any negligence on the part of the defendant doctors was not the proximate cause of Reid's harm, and the trial judge's grant of summary judgment was not in error.

Affirmed.

SHARPNACK, C.J., and MATTINGLY, J., concur.

---

4. ·The doctors designated an affidavit wherein the judge stated that he did not remember the details of this particular commitment, but that he "was convinced that John Reid needed to be detained immediately." Record at 380.