## OVERMAN *v.* STATE OF INDIANA.

[No. 24,346.    Filed April 22, 1924.]

1. WITNESSES.—*Guaranty Against Self-Crimination.—Application.*—The provision of the Constitution that "no person, in any criminal prosecution, shall be compelled to testify against himself" (Art. 1, §14, Constitution, §59 Burns 1914) applies not only to parties accused but to witnesses, and to testimony of any person in either civil or criminal prceedings, which might be used against him in any criminal prosecution.    p. 487.

2. WITNESSES.—*Self-Crimination Rule, Stated.*—A witness is excused from testifying not only to that which might incriminate him, or would amount to an admission of guilt, but he is excused if his answer would tend to incriminate him or would furnish one link in the chain of evidence necessary to convict him of a criminal charge.    p. 487.

3. WITNESSES. — *Self-Crimination.* — *Privilege cannot be Abridged.*—The privilege of a witness against giving incriminating testimony, being granted by the Constitution, cannot be abridged by any act of the legislature.    p. 488.

4. WITNESSES.—*Self-Crimination.—Statutory Immunity.—Must be as Broad as Constitutional Guaranty.*—A statute which undertakes to compel a witness to testify as to any matter which might tend to show that he has committed a crime must, grant to such person immunity which will fully guarantee to him his constitutional rights, that is, protect him to the same extent as the provision of the Constitution, and prevent his testimony being used against him in any criminal prosecution; it must fully shield the witness from *all* prosecutions or he cannot be compelled to testify.    p. 488.

5. WITNESSES. — *Self-Crimination.* — *Statute Requiring Discharged Defendant to Testify.—Statute.*—Section 2117 Burns 1914, Acts 1905 p. 584, providing that when two or more persons are included in one prosecution, the court may, at any time before a defendant has gone into his defense, direct him to be discharged, that he may be a witness for the State, and the order of discharge shall be a bar to another prosecution for "the same offense," not being as broad as the constitutional guaranty against self-crimination, a court cannot require a co-

defendant that has been discharged, over his objection, to testify for the State where his testimony might show him guilty of some other crime (*Baker v. State* (1877), 57 Ind. 255, distinguished). p. 489.

6. WITNESSES.—*Self-Crimination.*—*Codefendant. Discharged on Promise to Testify for State.*—*May be Required to Give Incriminating Testimony.*—A defendant who consents to testify against a codefendant if the charge against him is dismissed may be required to testify fully, even though his testimony might tend to show him guilty of other crimes, since, by such consent, he waives any privilege he may have had. p. 490.

7. WITNESSES.—*Self-Crimination.*—*Witness not Required to Show how Testimony might Criminate Him.*—A witness who claims protection against criminating himself does not have the burden of explaining how his testimony might tend to criminate him, as this would defeat the very object of the constitutional provision. p. 490.

8. WITNESSES.—*Self-Crimination.*—*Determination of Right to Immunity.*—When a witness claims immunity from answering a question on the ground that his testimony might tend to criminate himself, the court is authorized to determine whether the answer might have that effect, but, in determining this, the court is bound by the statement of the witness as to its effect, unless it clearly appears, from the examination and the circumstances before the court, that the witness is mistaken and the answer will not tend to criminate him, or that the witness' refusal is purely contumacious, but if the question be of such a nature that the answer may or may not criminte him, then the witness' determination is final. p. 491.

9. WITNESSES.—*Self-Crimination.*—*Discharged Codefendant.*—*Refusal to Testify.*—*Contempt of Court.*—In a prosecution against four persons for procuring an abortion, a defendant who had been discharged that he might testify for the State could not be compelled to testify regarding his acquaintance with the woman and his codefendants, as his testimony might have been such as to have tended to show him guilty of some crime other than abortion, and his refusal to testify would not be a contempt of court. p. 492.

From Starke Circuit Court; *W. C. Pentecost,* Judge.

Harry Overman was charged with direct contempt of court in refusing to testify in a criminal prosecution. He was adjudged guilty, and appeals. *Reversed.*

*William J. Reed, Albert G. Jenkins* and *John M. Spangler,* for appellant.

*U. S. Lesh,* Attorney-General, and *Mrs. Edward Franklin White,* Deputy Attorney-General, for the State.

GAUSE, J.—Appellant was charged in a statement made by the court below and entered of record, with being guilty of a direct contempt of said court, in that he refused to answer certain questions as a witness in a criminal cause then on trial before said court.

Appellant filed a statement in explanation and extenuation thereof and thereupon the court adjudged him guilty of a direct contempt and assessed a fine of $500 and imprisonment in the Indiana State Farm of ninety days. Appellant then filed his motion asking the court to reconsider its opinion and judgment, and that he be purged of the contempt charged, which motion was overruled. Appellant then filed his motion for a new trial, which was overruled. He assigns as error the overruling of his motion to reconsider, and also the overruling of his motion for a new trial.

It appears from the court's statement that appellant was a witness before the grand jury of Pulaski county and testified under oath in relation to the death of one Bulah Lurline Shaffer. That said grand jury returned an indictment against appellant and James Noland, Warren Morgan and Frank Irvin charging them with having committed an abortion upon said Bulah Lurline Shaffer, which resulted in her death. That said case was venued to the Starke Circuit Court and was submitted to a jury for trial. That on March 21, 1923, after evidence had been submitted by the state, but before the defendants had entered upon their defense, the case was dismissed as to appellant and appellant was discharged, upon motion of the state, to testify as a

witness for the state, to which dismissal and discharge appellant objected and excepted. That appellant was then called as a witness "to testify as a witness on behalf of the State and against the other three defendants." It then appears that said appellant was asked several questions regarding his acquaintance with said deceased woman and his codefendants. That he refused to answer said questions, on the ground that his answers would incriminate him, and that he claimed his personal privilege and refused to testify.

The court instructed appellant that as the case against him had been dismissed, he could not in any wise criminate himself by testifying, and that it was the duty of the court to require him to tell what he knew, if anything, about the charges in the indictment. The court instructed him that, if he did not answer, he would send him to jail, but he persisted in his refusal and the court ordered that he be taken to jail. That several hours later, he was again called as a witness and again he refused to answer said questions.

The appellant then filed a written statement in explanation of his refusal, in which it is alleged that on March 20, 1923, when the appellant was on trial in said cause, and before the same had been dismissed as to him, he was twice called to the stand as a witness by the state, but refused to testify. Said statement then alleges the proceedings of March 21, 1923, substantially as shown in the court's statement. It is also alleged that at no time did he agree to become a witness for the state or testify in said cause, and that he believed that such evidence would incriminate him and subject him to prosecution. That he never intended any contempt of the court, but has refused to testify for the reason that he believed he had the constitutional right to refuse to testify.

The court then adjudged him guilty of contempt and

assessed the penalty above set out. Appellant then filed his motion to reconsider the court's opinion and judgment, and then his motion for a new trial as above stated.

The practice followed was according to the provisions of §1046 Burns 1914, §1011 R. S. 1881, regulating trials for direct contempt.

It is apparent that the court below had the impression that §2117 Burns 1914, Acts 1905 p. 584, gave appellant such immunity as to secure him his constitutional right to refuse to be a witness as to any matter that might incriminate him.

This constitutional provision is that, "No person; in any criminal prosecution, shall be compelled to testify against himself." Art. 1, §14 Constitution, §59 1, 2. Burns 1914. This provision, which is similar in language to the like provision in the 5th amendment to the federal Constitution, is declaratory of the common law and applies not only to parties accused, but to witnesses. It guarantees a person against being compelled to give evidence in any proceeding, either civil or criminal, which might be used against him in any criminal prosecution. *French* v. *Venneman* (1860), 14 Ind. 282; *State* v. *Enochs* (1879), 69 Ind. 314; *Wilson* v. *Ohio Farmers Ins. Co.* (1905), 164 Ind. 462; *Counselman* v. *Hitchcock* (1892), 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110; 5 Jones, Commentaries on Evidence §884. He is excused from testifying not only to that which might directly incriminate him, or would amount to an admission of guilt, but he is excused if his answer would tend to criminate him or would furnish one link in the chain of evidence necessary to convict him of a criminal charge. *French* v. *Venneman, supra;* 5 Jones, Commentaries on Evidence §885; 40 Cyc 2540, and cases cited.

Chief Justice Marshall, on the trial of Aaron Burr,

used the following language, which is recognized as stating the true rule: "Many links frequently compose that chain of testimony which is necessary to convict an individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible, but a probable, case that a witness by disclosing a single fact may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing, but all other facts without it would be insufficient. While that remains concealed within his own bosom he is safe, but draw it from thence and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description." 1 Burr's Trial 244.

This privilege, being granted by the Constitution, it cannot be abridged by any act of the legislature. It follows that any statute which undertakes to 3, 4. compel a witness to testify to any matter which might tend to show that he has committed a crime must grant to such person immunity which will fully guarantee to him his constitutional rights. That is, such a statute must protect him to the same extent as does this provision of the Constitution, and prevent his testimony being used against him in any criminal prosecution. The statute must fully shield the witness or he cannot be compelled to testify. *State* v. *Enochs, supra; Bedgood* v. *State* (1888), 115 Ind. 275, 280; *Counselman* v. *Hitchcock, supra; Emery's Case* (1871), 107 Mass. 172; *Lamson* v. *Boyden* (1896), 160 Ill. 613, 43 N. E. 781; *Ex parte Clarke* (1894), 103 Cal. 352, 37 Pac. 230; Note in 2 Ann. Cases 177; Note in 17 Ann.

Cases 128; *State* v. *Bach Liquor Company* (1899), 67 Ark. 163, 55 S. W. 854.

It is therefore held in the above and many other cases, that a statute which only relieves the witness from prosecution for the crime on trial is not as full a protection against self-crimination as the Constitution grants him.

Section 2117 Burns 1914, *supra,* under which it was attempted to compel appellant to testify, reads as follows: "When two or more persons are included in one prosecution, the court may, at any time before a defendant has gone into his defense, direct him to be discharged, that he may be a witness for the state. A defendant may also, when there is not sufficient evidence to put him on his defense, at any time before the evidence is closed, be discharged by the court for the purpose of giving testimony for a codefendant. The order of discharge shall be a bar to another prosecution for the same offense."

It will be noted that this statute only relieves the witness from prosecution for the offense with which he had been charged and which charge had been dismissed. It does not purport to relieve him from liability for any other offense of which his evidence might show him guilty, although the Constitution absolutely protects him from being compelled to give evidence that might tend to show him guilty of any offense. It follows that said statute does not give him the same immunity given by the Constitution, and he cannot, by virtue of said statute, be required, over his objection, to give evidence that might tend to show him guilty of some other crime. The Attorney General cites the case of *Baker* v. *State* (1877), 57 Ind. 255, as holding that such a defendant who is discharged may be compelled to testify, but, in that case, the witness is not shown to have objected either to his discharge or to

testifying and it was his codefendants who objected. That case only decides that he was a competent witness as against them.

This statute was evidently intended to aid in inducing accomplices to testify against their confederates or others charged with them, but it clearly cannot

6. be used to compel a witness who does not consent thereto to testify, if such testimony might show him guilty of some crime other than the one charged. Of course, if such a defendant promises or consents to become a witness and because of such promise or consent, the charge is dismissed as to him, he is then required to testify fully regarding his knowledge of the facts involved, even though his testimony might tend to show him guilty of other crimes, but this is because, by consenting to become a witness under such circumstances, he has waived any privileges he may have had. For cases to this effect see note in 24 L. R. A. (N. S.) 443.

We have a statute granting immunity to a person testifying against another in a gambling charge, and also a statute relating to a witness who is required to testify touching the commission of a misdemeanor, but these statutes expressly grant to such witness protection against prosecution for any offense on account of such testimony. §§2112, 2113 Burns 1914, Acts 1905 p. 584. These statutes are not involved in this case and are only referred to as instances of immunity statutes which are sufficient to require a witness to give testimony and yet safeguards his constitutional rights.

It then remains to determine whether the testimony which it was sought to compel the appellant to give in this case might have tended to criminate him.

7. The witness is not put under the burden of explaining how the answer might tend to criminate him, as this would defeat the very object of the con-

stitutional provision.   5 Jones, Commentaries on Evidence §886; *Ex parte Senior* (1896), 37 Fla. 1, 19 So. 652, 32 L. R. A. 133; *People* v. *Mather* (1830), 4 Wend. (N. Y.) 230, 21 Am. Dec. 122; *Printz* v. *Cheeney* (1861), 11 Iowa 469; *Howard* v. *Commonwealth* (1904), 118 Ky. 1, 80 S. W. 211, 81 S. W. 704.

Some courts hold that the witness is the sole judge as to whether an answer will criminate him.   Others say, without limiting the statement, that it is for the court to say.   We think the better rule, the one sustained by the weight of authority and which is the one recognized in this state, is, that the court is authorized

8.  to determine whether the answer might criminate the witness, but that in determining this, the court is bound by the statement of the witness as to its effect unless it clearly appears from the examination and the circumstances before the court that the witness is mistaken and that the answer will not tend to criminate him, or that the witness' refusal is purely contumacious.   That if the question be of such a nature that the answer may or may not criminate him, then the witness' determination is final.   *Wilson* v. *Ohio Farmers Ins. Co., supra;* Burr's Trial, *supra; Karel* v. *Conlan* (1913), 155 Wis. 221, 144 N. W. 266, 49 L. R. A. (N. S.) 826 and note.

In the case at bar, although if the witness had become a witness for the state and testified regarding the case on trial, he could not afterwards have been prosecuted for the crime of abortion, because of our statute above quoted, yet, as we have seen, he would not, on account thereof, have been granted immunity from any other offense which his testimony might have shown him to be guilty of, or in support of which such testimony might have furnished a link.   What was demanded of him by the court was not limited to the specific questions asked, but he was instructed by the court that he

was to tell anything he knew about the charge in the indictment. This he refused to do.

Even to have answered the specific questions regarding his acquaintance with the woman whose death was charged to have been the result of the alleged abortion and as to his acquaintance with his codefendants might have furnished a link to have connected him with some of the transactions in a criminal way. When we consider that often the same transaction may involve a series of crimes, it is plain that immunity from one of the crimes involved would not necessarily mean immunity from all.

If the woman whose death is alleged to have been caused, was in the condition charged, it may be that whoever was responsible for that condition was guilty of a crime other than abortion. It might be the case that no abortion was committed, yet there might have been a conspiracy to have committed one. We cannot presume to judge what his testimony would have been, neither could the trial court. As was said by Chief Justice Marshall in the Burr trial heretofore referred to, "It follows necessarily then  *  *  *  that if the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not." Without attempting to point out what crime his testimony might have shown him guilty of, as, of course, we cannot do, it is apparent from what we have said that his testimony might have been such as to have tended to show him guilty of some crime other than abortion.

The Constitution protects a witness in such a case, but the statute above referred to does not. It

9. therefore follows that he could not be compelled to testify as the court directed, over the wit-

ness's statement under oath that his refusal was based upon the ground that his testimony might tend to criminate him.

Judgment reversed, with directions to the court below to sustain appellant's motion to reconsider its opinion and judgment, and to discharge the appellant.