BECK *v.* STATE OF INDIANA.

[No. 31,015. Filed April 16, 1968.]

*Raymond J. Fox, Carl M. Franceschini,* and *Fox, Franceschini, Transki & Martin,* of Michigan City, for appellant.

*John J. Dillon,* Attorney General, and *Michael V. Gooch,* Deputy Attorney General, for appellee.

PER CURIAM.—This is an appeal from the verdict of a jury finding appellant guilty of murder in the first degree and that he be imprisoned in the State Prison for life

A summary of the facts in this matter is as follows: Appellant was an inmate of the Indiana State Prison. On February 1, 1965, the appellant and one Victor Pitts, together with approximately 100 other inmates of the Indiana State Prison were in a building known as the yard office within the walls of the Indiana State Prison; in one corner of this building was a small enclosure used by the prison officials supervising the inmates. The convicts in this structure were awaiting assignments to work details. Evidence indicated that there had been some differences between the appellant Beck and the deceased Victor Pitts. Appellant was seen to walk toward Pitts, and as he approached, Pitts started to rise from a seat and placed his hand in his pocket. A blow was struck by appellant to the chest of Pitts. Appellant was then seen walking out of the building. As appellant turned away from Pitts, Pitts was heard to say "He cut me—that old fool cut me", and when asked by bystanders who, stated that fool Beck. There was evidence that someone was heard to say "Don't pull it out, leave it in", but Pitts was seen to throw something away from him which was apparently the knife with which he had been stabbed in the chest. Pitts then walked to the officer's enclosure and yelled to the officer to call the hospital, that he had been cut. Pitts then turned away from the window to the officer's office, slumped to the ground and was seen to bleed and hemorrhage from the mouth and nose. A call was made to the hospital, and then the office of the Deputy Warden Gohn was informed that a stabbing had occurred in the yard office. Officer Collins who

was attempting to assist Pitts was told prior to the death that Pitts had been stabbed by the appellant Beck. Officer Collins went out of the building, saw appellant walking toward the barber shop where he apprehended appellant, proceeded to search appellant's clothing and found a small knife in his pocket.

Deputy Warden Gohn first saw appellant and the officers with him walking towards his office, and met them in the hallway leading to his office. Upon facing appellant, Deputy Warden Gohn, according to his testimony, asked what happened and the appellant replied, "I'll tell you what happened —I cut a guy", and further indicated that he had stabbed Pitts. Gohn then took appellant to his private office alone and interrogated appellant further asking why he had done it. After a short interrogation Deputy Warden Gohn took appellant to an area in the same building which was used for solitary confinement, turned him over to the guards of that area and ordered him placed in seclusion or solitary confinement.

After being ordered to remove his clothing and a search had been made, appellant alleged he was placed in a room known as the "dungeon", without clothing and shackled, spread eagle to the floor. Such a cell admittedly existed in the basement of the seclusion area. Officer Jacobs in charge of the seclusion area testified that appellant was not placed in such a cell, but was placed in a solitary seclusion cell on the first floor of the building. It was further testified by officers of the prison that the dungeon cells in the basement were not then being used on orders of the warden.

In the meantime, Deputy Warden Gohn had gone to investigate the incident and about 2:00 o'clock in the afternoon had appellant returned to his office for further interrogation. This interrogation was in front of the Warden and written notes of the statements made by the appellant were made by the Deputy Warden. After the interrogation, appellant was returned to his cell in seclusion. At the time of the taking

of this statement, the fact that Pitts had died was not relayed to the appellant. The appellant was not informed of the death of Pitts before either interrogation, and the record indicates that he was not informed of his right to remain silent or that anything he might say might be used against him in a trial, or that he had the right to consult an attorney before making any statement.

After the statement in long hand by Deputy Gohn had been typed appellant was returned to the Deputy Warden's office where the typewritten statement was signed by the appellant. Later in the same day the sheriff of LaPorte County, a detective sergeant and the prosecuting attorney of said county and a state trooper of the Indiana State Police arrived at the prison and were informed of the incident and that appellant Beck had given a written statement. Thereafter they proceeded to interrogate the appellant concerning the incident. This interrogation took place in the yard office where the incident had occurred, and during the interrogation appellant was requested to go through a reinactment of the incident, parts of which were photographed and some of such photographs were offered and received into evidence. Prior to the interrogation by the sheriff and the detective sergeant appellant was for the first time advised that he had a right to remain silent, that anything he might say could be used against him and that he was entitled to an attorney. This interrogation was continued in the office of the Deputy Warden where it was typed and later signed by the appellant.

At the trial appellant filed a verified motion to suppress all oral and written statements made by him concerning the offense with which he was charged. After a hearing, the court overruled said motion in part and sustained said motion in part. The court overruled the objection to the oral statements made by the appellant to the Deputy Warden when they first met in the hallway leading to the office of the said deputy. The Deputy Warden was permitted to testify to such confession over objection of the appellant. The court ruled

that the statement taken by the Deputy Warden after the appellant had been placed in seclusion was not admissible and said statement was not introduced before the jury. The court also ruled that the statement taken from the appellant by the sheriff and detective sergeant was admissible and said written statement was received in evidence over objection of the appellant. Appellant likewise objected to photographs taken of the reinactment of the incident which were received into evidence.

Appellant's motion to suppress the oral and written statements was based on the ground that they were obtained in violation of the following constitutional provisions:

"Section 14 of Article I, Section 13 of Article I of the Indiana Constitution and The Fourteenth Amendment of the Constitution of the United States of America. Also that they were obtained in violation of Acts 1905, Ch. 169, Section 239, the same being Sec. 9-1607, Burns' Ind. Stat. Annot. 1933, and Ch. 169, Sec. 65 Acts Indiana Legislature 1905, the same being Sec. 9-704, Burns' Ind. Stat. Annot. 1956 Repl."

The state in its brief has cited the cases of *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, and *Johnson* v. *New Jersey* (1966), 384 U. S. 719, 734, 86 S. Ct. 1772; appellant has cited the case of *Escobedo* v. *State of Illinois* (1964), 378 U. S. 478, 84 S. Ct. 1758.

It is true that *Johnson* v. *New Jersey, supra* has held these decisions would apply only to trials after the commencement of the above cases. The guide lines set down in *Escobedo, supra* indicate that the decision is available to persons whose trial began after *June 22, 1964,* and in *Miranda, supra* only to persons whose trial began as of the *13th of June, 1966.* Hence, the guide lines set down in Escobedo certainly would be available in the case on appeal, which was tried on Nov. 29, 1965.

The Supreme Court has brought the right to counsel into the police interrogation room as the decision in *Escobedo,*

*supra,* holds. In that case Escobedo, originally arrested on suspicion of murder, was released on a petition of habeas corpus obtained by his retained lawyer. Some ten days later Escobedo was again arrested. The police denied Escobedo and his lawyer a consultation until after the questioning was finished. During the police interrogation an incriminating statement was made. Thereafter, Escobedo was tried, convicted and sentenced. The U. S. Supreme Court reversed his conviction. The court held

> ". . . that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the constitution as made 'obligatory upon the states by the 14th Amendment', *Gideon* v. *Wainright,* 372 U. S. at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

This is applicable to the case on appeal.

In the recent Supreme Court decision of *Dell* v. *State of Indiana* (1967), 12 Ind. Dec. 196, 231 N. E. 2d 522, [249 Ind. 231], Lewis, C. J. cited the *Johnson* case *supra,* but as far as the Escobedo and Miranda cases were concerned indicated that the states were free to adopt stricter standards. The case of *Gibson* v. *U. S.* (1966), 363 F. 2d 146 was cited wherein the court reversed a pre-Miranda conviction involving a Dyer Act violation. The defendant had made statements and admissions to an FBI agent and on remand the court indicated that these statements "must now hurdle the barriers" set forth in Miranda.

Thereafter, cases in Arizona, California, Hawaii, Kansas, Kentucky, North Carolina and Wisconsin likewise have held that on retrial, defendant is entitled to no less protection of

the Constitution that one simultaneously brought to trial for the first time.

Lewis, C. J. concluded for this court that in view of the fact that the Third, Fifth and Ninth Circuit Courts of Appeal have adopted the majority view, we also adopt the majority holding and indicated that on a retrial the Miranda warning requirements, the prerequisite for the admissibility of confessions or statements, are to be applied to retrials occurring after the 13th day of June, 1966.

We believe that the case of *Leyra* v. *Denno* (1954), 347 U. S. 556, 74 S. Ct. 716, and *Jackson* v. *U. S.* (1959), 273 F. 2d 521 were properly cited by appellant and are pertinent to the case on appeal. In the *Leyra* v. *Denno* case, *supra*, Mr. Justice Black speaking for the majority held that:

> ". . . use of confessions extracted . . . from a lone defendant unprotected by counsel is not consistent with due process of law as required by our Constitution."

The appellant likewise cited the case of *People* v. *Dorado* (1954), 42 Cal. Rptr. 169, 398 P. 2d 361. The facts were similar to the facts in the case on appeal. In that case the court held "The use of an involuntary confession results in a denial of due process and requires reversal regardless of other evidence of guilt." The court further went on to say that the improper introduction of the confession which had been obtained in violation of the constitutional right to counsel transgresses the right of due process no less than the legal introduction of a confession which has been coerced. Almost invariably a confession will constitute persuasive evidence of guilt, and it is therefore usually extremely difficult to determine what part it played in securing the conviction even though it is apparent that *there is considerable evidence of guilt in the case on appeal.*

Thus, in the instant case the improper introduction of the confession, obtained in violation of a constitutional right, compels reversal.

The judgment is reversed with instructions to grant appellant's motion for a new trial.

Arterburn, J. dissents.

NOTE.—Reported in 235 N. E. 2d 699.