HASKETT v. STATE OF INDIANA.

[No. 569S105. Filed November 10, 1970. No petition for rehearing filed.]

*Forrest Bowman, Jr., Ferdinand Samper,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Edward Squier Neal,* Deputy Attorney General, for appellee.

DeBRULER, J.—This is an appeal from a finding of criminal contempt against appellant in Marion County Criminal Court, Division I.

On November 27, 1961, an affidavit was filed against appellant for "peeping" in violation of Burns § 10-4910. Three days later the Prosecutor filed a petition for a hearing to determine whether appellant was a criminal sexual psychopath within the meaning of Acts 1949, ch. 124, §§ 1 through 12, the same being Burns §§ 9-3401 through 9-3412. The trial court found appellant to be a criminal sexual psychopath. On July 10, 1967, the trial court sustained appellant's belated motion for new trial and discharged him from custody.

On September 20, 1967, the trial court ordered the appellant re-examined and appellant sought a writ of mandate to have the trial court strike the order to have appellant re-examined

by the doctors. This Court denied the writ in *State ex rel. Haskett* v. *Marion Co. Criminal Court, Div. I* (1968), 250 Ind. 229, 234 N. E. 2d 636.

On January 15, 1969, the trial court again ordered appellant to report to the doctor's office for examination. Appellant filed a notice of non-compliance reading in part as follows:

"2. Defendant respectfully informs the Court that he will comply with that part of the order which requires him to submit to a personal examination by each of the above named physicians, but will not comply with that part of the order which requires him to answer all questions put to him by said physicians for the reason that that part of the order requiring the defendant to answer all questions put to him by said physicians violates his privilege against self-incrimination as guaranteed by the Fifth Amendment to Constitution of the United States of America, and that to answer said questions might tend to incriminate him.

"3. Defendant further states, by way of illustration, that the answering of questions put to him by said physicians might expose him to an involuntary incarceration in this court and cause as a criminal sexual psychopath.—Defendant further states that to answer said questions as put to him by said physicians might expose him to prosecution for any conviction of crimes against the State, the United States of America, and other states of the Union."

On February 13, 1969, the trial court held a hearing on the notice of non-compliance. The trial court in open court directly ordered appellant to answer the doctors' questions and appellant refused. Thereupon, pursuant to Burns § 9-3404(a), the trial court found appellant in direct criminal contempt for refusing to answer the doctors' questions, fined him $51.00 and set an appeal bond of $100.00. Burns § 9-3404(a), in pertinent part ,reads:

"The alleged phychopathic person who is examined by the two physicians is required to answer the questions propounded by the physicians under penalty of contempt of court."

Appellant argues that that part of Burns § 9-3404(a) is invalid on the ground that it compels a defendant to incrimi-

nate himself in violation of his privilege against self-incrimination as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. We agree. In addition, it is in violation of Art. 1, § 14 of the Indiana Constitution which has the same scope and effect as the privilege against self-incrimination in the Fifth Amendment.[1]

The Fifth Amendment privilege is applicable to the states through the due process clause of the Fourteenth Amendment. *Malloy* v. *Hogan* (1964), 378 U. S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653.

The appellant had the right to invoke his privilege at this stage of the proceedings because the doctors' interviews were an integral, preliminary part of the commitment process under this statute. Burns § 9-3404(a). The privilege can be claimed in the investigatory stage of the proceedings. *In re Gault* (1967), 387 U. S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527; *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694; *Murphy* v. *Waterfront Commission of New York Harbor* (1964), 378 U. S. 52, 84 S. Ct. 1594, 12 L. Ed. 2d 678; *Beck* v. *State* (1968), 250 Ind. 276, 235 N. E. 2d 699. The privilege not only extends to answers that would in themselves incriminate the appellant but also covers those which would furnish a link in the chain of evidence needed for a prosecution. *Hoffman* v. *U. S.* (1950), 341 U. S. 479, 71 S. Ct. 814, 95 L. Ed. 1118; *Overman* v. *State* (1923), 194 Ind. 483, 143 N. E. 604.

Since appellant's answers to the doctors' questions were to be used in a criminal sexual psychopath hearing we must determine whether such a hearing is a criminal proceeding within the meaning of the Fifth Amendment and Art. 1, § 14, such that appellant's answers would *incriminate* him.

---

1. The Fifth Amendment provision reads: "No person . . . shall be compelled in any criminal case to be a witness against himself. . . ."

Article 1, § 14, provides: "No person, in any criminal prosecution, shall be compelled to testify against himself."

The title of the Act is "AN ACT defining *criminal* sexual psychopathic persons. . . ." (Emphasis added.)[2] The first section of the Act reads:

> "Any person over the age of sixteen years who is suffering from a mental disorder and is not insane or feebleminded which mental disorder is coupled with *criminal propensities to the commission of sex offenses,* is hereby declared to be a *criminal* sexual psychopathic person." (Emphasis added.) Burns § 9-3401.

The Act may only be invoked against a person charged with or convicted of certain sex crimes. Burns § 9-3403; *State ex rel. Savery* v. *Criminal Court of Marion Co., Div. I* (1955), 234 Ind. 632, 130 N. E. 2d 128. The jurisdiction over such a proceeding is granted as follows:

> "Jurisdiction of criminal sexual psychopathic person charged with *criminal* offenses is vested with courts having general jurisdiction of *criminal* cases." (Emphasis added.) Burns § 9-3402.

An appeal from the trial court determination may be had as follows:

> "Appeal may be taken from any final order or judgment of the court herein in the manner provided by law for appeals in *criminal* cases." (Emphasis added.) Burns § 9-3406.

We believe these factors indicate that the Legislature considered these proceedings to be criminal in nature.

Much more fundamental, however, is the fact that upon determination that a defendant is a criminal sexual psy-

---

2. "AN ACT defining *criminal* sexual psychopathic persons, providing a lawful method of procedure in adjudging a person to be a *criminal* sexual psychopathic person, giving courts having general jurisdiction of *criminal* cases jurisdiction thereof, providing for their commitment and confinement to suitable institutions for their care and treatment, their parole and discharge therefrom, the apprehension and return of escaped *criminal* sexual psychopathic persons, providing for time and place of trial, providing for appeals therefrom, and declaring an emergency." (Emphasis added.)

chopathic person, the defendant may be incarcerated ■ in a state psychiatric institution for an indefinite period, possibly for life.

"If such person is found by the court to be a criminal sexual psychopath, the court shall in its order and judgment commit such person to the division of mental health, to be confined by the division in an appropriate state psychiatric institution until such person shall have fully and permanently recovered from such psychopathy." Acts 1959, ch. 356, § 1, the same being Burns § 9-3404(d).

If appellant had been tried and convicted on the original criminal charge of "peeping" he could have received a maximum sentence of $50.00 fine and sixty (60) days in prison. Burns § 10-4910.

We do not see how the criminal sexual psychopath hearing can be considered anything except in the nature of a criminal proceeding, for purposes of determining whether the defendant may refuse to supply the information which may result in his indefinite incarceration.

The United States Supreme Court decision in *In re Gault,* *supra,* is relevant here. The positions of appellant and Gault, under the psychopath statute and an analogous juvenile statute, are very similar: both committed misdemeanors; neither was criminally convicted of the misdemeanor; nonetheless, both received greater sentences than would have resulted from such a conviction; and both were involuntarily confined under procedures labeled "civil" which were alleged to be exempt from the due process requirements of the Fourteenth Amendment.

In *In re Gault,* the Supreme Court said, in disposing of the claim that the privilege was not available to children in juvenile court proceedings because the answers were to be used in "civil" proceedings:

"Against the application to juveniles of the right to silence, it is argued that juvenile proceedings are 'civil' and not 'criminal', and therefore the privilege should not apply. It is true that the statement of the privilege in the Fifth

Amendment, which is applicable to the States by reason of the Fourteenth Amendment, is that no person 'shall be compelled in any *Criminal case* to be a witness against himself.' However, it is also clear that the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites. The privilege may, for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory.

It would be entirely unrealistic to carve out of the Fifth Amendment all statements by juveniles on the ground that these cannot lead to 'criminal' involvement. In the first place, juvenile proceedings to determine 'delinquency,' which may lead to commitment to a state institution, must be regarded as 'criminal' for purposes of the privilege against self-incrimination. To hold otherwise would be to disregard substance because of the feeble enticement of the 'civil' label-of-convenience which has been attached to juvenile proceedings. . . . For this purpose, at least, commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called 'criminal' or 'civil.' And our Constitution guarantees that no person shall be 'compelled' to be a witness against himself when he is threatened with deprivation of his liberty—a command which this Court has broadly applied and generously implemented in accordance with the teaching of the history of the privilege and its great office in mankind's battle for freedom."

This reasoning has been relied on in the recent case of *In the Matter of Winship,* United States Supreme Court No. 778, March 31, 1970, 7 Cr. L. 30007.

We adopt this reasoning and hold that the last sentence of Burns § 9-3404(a), *supra,* is invalid because it is in conflict with the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution and Art. 1, § 14 of the Indiana Constitution.

Judgment reversed.

Hunter, C.J., concurs with opinion; Jackson, J., concurs; Arterburn, J., dissents with opinion in which Givan, J., concurs.

## Concurring Opinion

HUNTER, C.J.—Although my position on the constitutionality of the criminal sexual psychopath statutes was made clear by my original vote in this case (see J. Jackson's dissenting opinion, *State ex rel. Haskett* v. *Marion County Criminal Court* (1968), 250 Ind. 229, 234 N. E. 2d 636), I should like to go on record now as opposing its application, particularly under such facts as appear in this case, i.e. appellant's objection and refusal to waive his constitutional right against self-incrimination. Ind. Const., Art. 1, § 14, U. S. Const.; Amend. V, XIV.

Regardless of the characterization of the proceedings, appellant, if forced to testify, would subject himself to possible involuntary commitment. Before such an individual is deprived of his liberty he must be accorded, in my opinion, the basic and fundamental right against self-incrimination contemplated by our concept of due process of law. As was noted by Judge Jackson:

> "Neither sound logic nor fundamental justice dictates that the constitutional protectives may be ignored in civil proceedings and must be followed in criminal proceedings. The end result under the Act is incarceration for an indeterminate period of time against one's will. An individual exposed to a procedure that can result in his incarceration is entitled to his privilege against self-incrimination regardless of the euphemistic characterization of that procedure." 234 N. E. 2d at 643.

That courts are beginning to realize that the substantial rights of an individual must be afforded when faced with the spectre of involuntary commitment was demonstrated by the United States Supreme Court in the case of *In Re Gault* (1967), 387 U. S. 1, 18 L. Ed. 2d 527 cited by the majority. See also *Miller* v. *Blalock* (4th Cir. 1969), 411 F. 2d 548; *Heryford* v. *Parker* (10th Cir. 1968), 396 F. 2d 393. Whether all rights presently considered so basic to our concepts of ordered liberty in a criminal proceeding to have been incorpo-

rated under the Fourteenth Amendment due process clause will eventually be likewise extended to a person facing involuntary commitment under other proceedings has not been decided, nor has this court taken such a position. See *Bible* v. *State* (1970), 253 Ind. 373, 254 N. E. 2d 319. Clearly the United States Supreme Court has not purported to so hold. *In Re Gault, supra; Re Winship* (1970), 397 U. S. 358, 25 L. Ed. 2d 368. I believe and I feel have demonstrated (*Bible* v. *State, supra*) that extreme caution must be exercised in this area if the various programs established for the purpose of committing individuals other than by the criminal process are to remain functional. However it offends my sense of justice to require an individual to give evidence against himself where the end result will be possible involuntary commitment to an institution regardless of its nature. It is on this basis that I therefore concur with the majority opinion.

DISSENTING OPINION

ARTERBURN, J.—This appeal was fully adjudicated by this court involving the same case and the same parties in *State ex rel. Haskett* v. *Marion County Criminal Court, Division One* (1968), 250 Ind. 229, 234 N. E. 2d 636. In that case there was an original action in this court to compel the trial court to expunge an order against the appellant in this case "to answer all questions put to him by physicians and each of them pursuant to statute." We there denied the writ and authorized the trial court to order him to answer. The same question is presented here a second time in a contempt for refusal to answer these same questions. If there ever is a case of adjudication, I think this is such a case.

In that previous case we considered the constitutionality of the statute authorizing a mental examination of the appellant in a criminal case and whether he was privileged not to answer. We held there that he should answer because the statute specifically granted him immunity from criminal

prosecution for anything said to the examining physicians and that such evidence could not be used against him in a criminal trial. Statutes granting immunity where testimony is compelled, as before a grand jury, etc., have consistently been upheld and should be in this case.

There is one other point that appears to me to be quite inconsistent in relying upon the United States Supreme Court cases in a proceeding such as this, when that court holds that a juvenile proceeding, *although it is not criminal,* must conform to certain constitutional provisions relating *only to criminal cases.* I fail to see what jurisdiction or authority the United States Supreme Court has under our constitution to impose upon proceedings other than criminal proceedings, constitutional rules relating only to criminal proceedings such as that of the Fifth Amendment, which states it applies only to criminal proceedings. A juvenile proceeding or a proceeding to determine whether a person is a sexual psychopath is either criminal or not, and for a court to reach over and give it a quasi character so as to apply constitutional rules of criminal law thereto is indeed an amazing feat of interpretation of a constitutional provision which by its very working applies only to criminal procedure.

For the reasons stated, the judgment should be affirmed.

Givan, J. concurs.

NOTE.—Reported in 263 N. E. 2d 529.