**Wiley F. GREEN, II, Appellant (Defendant Below),**

v.

**STATE of Indiana, ex rel. the Indiana DEPARTMENT OF STATE REVE-NUE, Appellee (Plaintiff Below).**

No. 1–1278A352.

Court of Appeals of Indiana,
First District.

June 25, 1979.

Rehearing Denied July 23, 1979.

Roger V. Bradford, Portage, for appellant.

Theodore L. Sendak, Atty. Gen., Charles D. Rodgers, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Wiley F. Green, II (Taxpayer) brings this appeal from an indirect contempt order against him as authorized under Ind.Code 6–3–6–14 for failure to obey the court's order to produce any books, records and the like as requested in an administrative subpoena issued under authority of the same statute by the Indiana Department of State Revenue (Department).

We affirm in part and reverse in part.

The facts of this case begin with the state tax return for individual adjusted gross income tax filed by the Taxpayer on April 15, 1977. The Taxpayer filled out his name and address and signed the return, but put asterisks in the rest of the lines with the statement on the bottom of the return preceded by an asterisk stating, "This means that objection is taken to the specific questions on grounds of the 4th and 5th amendments of the United States Constitution, to the question as to Federal Reserve Notes, and that similar objection is made to the question under the 1st, 4th, 7th, 8th, 9th, 10th, 13th, 14th and 16th amendments." The Taxpayer did put down that he received less than 740 dollars of income with the comment that "this is not according to my understanding of a 'dollar'." Other statements concerning the Taxpayer's constitutional rights were made on the return by the Taxpayer.

Apparently intrigued by this filing, the Department checked into its files, found no tax returns from the Taxpayer for the years 1972 through 1976 and wrote the Taxpayer asking that he obtain information concerning his liability and submit it to the Department. The Taxpayer did not cooperate and the Department issued a subpoena under authority of IC 6–3–6–14 to produce such books, records and the like needed to compute his tax liability for the years mentioned above. The Taxpayer refused. Again, according to the provisions of IC 6–3–6–14, the case was referred to the attorney general's office to bring suit on behalf of the Department on February 22, 1978, in the Boone County Circuit Court to compel the Taxpayer to produce the records. Various hearings were had, the Taxpayer again refused compliance and the trial court found the Taxpayer in contempt of

court and sentenced him to 90 days of imprisonment and fined him $500. Taxpayer appeals from this order.

The Taxpayer appeals on three grounds. The first is that he has a constitutional right under the fifth amendment not to incriminate himself by producing personal documents under the subpoena. The second ground is that the State has not sustained its alleged burden of proof that the Taxpayer is indeed a Taxpayer as defined in the Indiana Tax Code and thus the trial court erred in ordering compliance to the subpoena. The third ground is that the Taxpayer was not given due process of law in hearings held by the trial court concerning the order to produce and contempt hearings.

## I.

The process of gathering specific information by the Department concerning recalcitrant taxpayers is found in IC 6–3–6–14, and related statutes. First, under penalty of criminal violation,[1] a taxpayer must keep and preserve records of his adjusted gross income and other such books and accounts as may be necessary to determine the amount of the tax. The Department has the power to subpoena such records under IC 6–3–6–14. When the taxpayer fails or refuses to submit the same, the subpoena is enforcible in the circuit court of the county of the taxpayer. The court's method of enforcement is indirect contempt.

There is no case law in Indiana on this procedure. However, this procedure is almost identical to that found in the Internal Revenue Code where there has been judicial interpretation.[2] We will, then, refer to federal law for guidance on this matter.

■ We first note that the Taxpayer in this case has ineffectively presented his fifth amendment objections. The cases are replete that it is the court that determines whether certain information is self-incriminating, not the taxpayer. In short, a taxpayer cannot assert the privilege

. . . in a broad or general sense as a ground for striking down the summons. Rather Plaintiff must respond to the summons and interpose the constitutional claim with respect to specific documents or questions, thereby developing a record of narrowly defined issues upon which intelligent, seriatum decisions can be rendered.

*Gutierrez v. U. S.*, (1976) 76–1 U.S. Tax Cas. (CCH) § 9392 (M.D.Fla.). *See also U. S. V. Jones*, 538 F.2d 225 (8th Cir. 1976); *Brown v. U. S.*, (1928) 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500 (antitrust subpoena duces tecum).

The tax law of Indiana, like that of the federal government, was enacted on the concept of "self-assessment and voluntary compliance." *U. S. v. Runte*, (1973) 73–1 U.S. Tax Cas. § 9265 (W.D.La.). As in the federal system, the Indiana legislature has insured compliance by giving the Department the administrative subpoena. We cannot let a taxpayer subvert this system by general blanket assertions of constitutional protections. We will not condone the viewpoint that the fifth amendment protection against self-incrimination can protect a taxpayer from not filing a return or filing a return such as the Taxpayer's. Cases have held that a taxpayer is not so protected even when the income is illegally gained. *U. S. v. Oliver*, 505 F.2d 301 (7th Cir. 1974).

On the other hand, we must note that at some point a civil action to gather information to determine tax liability could turn into an inquisition to gather personal information from a taxpayer in order to criminally prosecute him for a tax offense. The federal cases have centered around at what point in the administrative subpoena process the taxpayer can assert fifth amendment rights.

Although this Taxpayer's fifth amendment objections are of too general a nature as to require consideration by us, we take the opportunity to set out the limitations of the Department in compelling information by way of the subpoena.

---

1. IC 6–3–6–10.

2. I.R.C. § 7602 and § 7604. The subpoena is called a summons in the Tax Code.

██ It is basic that the fifth amendment protection against self-incrimination exists only in criminal actions.[3] The protection is generally not available in civil proceedings unless there are criminal overtones. *See, e. g., Haskett v. State,* (1970), 255 Ind. 206, 263 N.E.2d 529. In the tax administration subpoena area at both the federal and Indiana levels, the purpose as authorized by the statute is to gather information to collect taxes, not to criminally prosecute. *U. S. v. LaSalle National Bank* (1978), 437 U.S. 298, 98 S.Ct. 2357, 2376 ft. 18, 57 L.Ed.2d 221; *U. S. v. Bisceglia,* (1975) 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88. This is so even if there is a possibility of later using the information in a criminal suit. *U. S. V. Roundtree,* 420 F.2d 845 (5th Cir. 1969). However, as stated above and pointed out in *LaSalle, supra,* 98 S.Ct. at 2363, the legislature has created a law enforcement system in which criminal and civil elements are inherently intertwined. Thus, the line between civil and criminal proceedings is difficult to draw. *Donaldson v. U. S.,* (1971) 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580, drew the line in the federal system at the recommendation to the Department of Justice for prosecution. In Indiana, we cannot draw such a "bright-line" between the civil and criminal. The Department, unlike the IRS, cannot represent itself in court in enforcement proceedings, but rather must make use of the offices of the Attorney General for this purpose. The Attorney General, under IC 6–3–6–11, also has concurrent jurisdiction with the local prosecutor to prosecute criminal tax cases. Thus, unlike the federal system, the Attorney General's office is active in the original subpoena enforcement and consequently its first involvement cannot be the determinative factor. We, however, feel that a recommendation to the Attorney General for prosecution (or the initiation of such an action) can serve as notice that the process has become criminal.

██ Before we examine to what stage the process progressed in this case, we note that the United States Supreme Court in *Donaldson* also held that the subpoena must be issued in good faith to preserve the status of the enforcement proceeding as being civil in nature. We endorse this concept as outlined in *U. S. v. Powell,* (1964), 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112.

. . . that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry be relevant to the purpose, that the information sought is not already within the Commissioner's possession and that the administrative steps required by the Code have been followed . . . .

And as stated recently in *LaSalle, supra,* 98 S.Ct. at 2367–68, the good faith test includes whether the "institutional posture", not the individual agent's motivation, shows that there is an abandonment of the department's pursuit of civil tax determination.[4]

██ Although the deputy Attorney General in the hearings below on the subpoena enforcement stressed the civil nature of the action, we note that the petitioner for enforcement of the subpoena alleges that the Taxpayer is in violation of certain criminal tax statutes. However, we can find no evidence in the record that any criminal action has been recommended or has been contemplated. Further, it is the Taxpayer's burden in resisting the subpoena to show this. *LaSalle, supra* at 2367.

In sum, then, we determine that the Taxpayer here did not properly present his fifth amendment claims and even if he had they were not available in this particular proceeding.

See Van Wert, *Tax Frauds and the Government's Right of Access to Taxpayer's Books and Records,* 5 Pepperdine L.R. 403 (1978); Mills, *The Fifth Amendment Privilege and Other Protections against Self-incrimination in Federal Tax Investigations,* 43 Missouri L.R. 667 (1978).

---

3. U.S. 14th and 5th amendments; Ind.Const. Art. 1, § 14.

4. The commentators, who already complained of the heavy burden of proof on the Taxpayer to show intent to criminally prosecute on the part of the taxing authority, will no doubt make stronger complaints over this new "institutional" standard.

The Taxpayer's second ground on appeal needs little discussion. Taxpayer's argument in a nutshell seems to be that before a subpoena can be issued and enforced by the court there must be an allegation and proof by the State that the Taxpayer was a "taxpayer" as defined in IC 6–3–1–15 ("any person or any corporation subject to taxation under the act"). The Taxpayer goes on to misconstrue IC 6–3–4–1 as defining who is "subject to taxation", when actually that statute sets out who is required to file a tax return.

IC 6–3–6–14 states "the department . . may by the issuance of a subpoena require the attendance of the taxpayer or any other person and take his testimony with respect to any such matter [the correction of any return, or for the purpose of making a return, as required by this act, where none has been made], and may require any such person to produce any books or records specified in such subpoena . . . ."

Taxpayer, again, is defined as *any person subject* to the tax. It has been stated, in *regard to the similar federal definition of* taxpayer:

> Under this definition it is not necessary that a person actually be liable for the tax; it is sufficient that he is *potentially liable* for it, even if it is ultimately determined that he in fact owes no tax. Accordingly, when returns were filed in Mrs. Morse's name declaring income to her for 1944 and 1945, and making her potentially liable for the tax due on that income, she became a taxpayer within the meaning of the IRC. [emphasis added]

*Morse v. U. S.*, 494 F.2d 876, 880 (9th Cir. 1974).

■ In this case, the Taxpayer did file a return, and the Department under the statute was empowered to determine the correctness of the return. Further, as a *prima facie* resident of Indiana, the Taxpayer was "potentially liable" for tax due [5] and the

Department was certainly empowered to inquire further by using the subpoena. To rule otherwise would render the subpoena power useless, since it is through the subpoena power that the actual liability, if any, is shown.

The Taxpayer's third allegation of error is that he was not afforded due process in the various hearings held below. The Taxpayer's specific complaint is that he was not given an opportunity to be heard before an order was entered to compel production of the documents.

The record shows that on February 22, 1978, a petition was filed and an order given for the Taxpayer to appear on February 28, 1978, with the documents requested in the subpoena. On February 28, 1978, the petition for compliance with the subpoena along with the Taxpayer's Motion to Dismiss were considered in an adversary hearing in court at which the Taxpayer presented his arguments. The court rejected the Taxpayer's motion and an order was given to produce. Upon the Taxpayer's failure to produce, a second petition for insurance of the prior order to produce given earlier was submitted to the court on March 1, 1978, by the State and was granted with a hearing date set for March 22, 1978, in which the Taxpayer was to appear with the records. A change of venue from judge was granted before this second hearing was to be held. The special judge did not hold the second hearing, but rather set a hearing date of August 17, 1978, to determine if the Taxpayer was in contempt for failure to obey the order. The hearing was held in which the Taxpayer again presented all his arguments, after which the Taxpayer was found in contempt.

■ After reviewing this record, we find that the Taxpayer was afforded every opportunity to present his arguments and that there was no denial of due process.[6] In this

---

5. IC 6–3–2–1.

6. The State argues that the Taxpayer has filed a belated appeal in that the first order to produce was an appealable final judgment and the Taxpayer cannot wait until the contempt judgment was given to appeal. Since the trial court

heard, without State objection, all the Taxpayer's arguments concerning the propriety of the court order to enforce the subpoena at the contempt hearing, we determine that the Taxpayer can raise these issues in his appeal from the contempt order.

case, the Taxpayer presented all his arguments in the contempt hearing. He has not shown how he was harmed.

▮ In one respect we reverse the trial court's order. In reviewing the statute under which the contempt order was made, we determine that the contempt order was intended to coerce the Taxpayer to comply, not to punish him. Therefore, the trial court's order should be made conditional upon Taxpayer's responding to the subpoena. He should carry the keys of his prison in his own pocket.

Affirmed in part, and reversed in part for further proceedings not inconsistent with this opinion.

LOWDERMILK, P. J., and LYBROOK, J., concur.